UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
INDUSTRIAL WINDOW CORP.,

                      Plaintiff,

      -against-

FEDERAL INSURANCE COMPANY,

                      Defendant.
-----------------------------------------------------------X

Civ. No.: 07 CV 10959
(Rakoff, J.)

**AFFIDAVIT OF
GEORGE KOUGENTAKIS
IN SUPPORT OF FEDERAL'S
<u>MOTION TO DISMISS</u>**

STATE OF NEW YORK  )
                           ) ss.
COUNTY OF KINGS    )

      **GEORGE KOUGENTAKIS**, being duly sworn deposes and says:

      1.    I am the President of Beys General Construction Corp. ("Beys"). I submit this affidavit in support of the motion of defendant Federal Insurance Company ("Federal") for an Order pursuant to Rule 12(b)6 of the Federal Rules of Civil Procedure ("FRCP") dismissing the complaint as against Federal upon the ground that the instant action is barred by the resolution of disputes provisions contained in the contract which is incorporated by reference in the payment bond issued by Federal; or in the alternative, converting this motion, pursuant to FRCP 12(b), to a motion for summary judgment under Rule 56 of the FRCP and awarding summary judgment dismissing the complaint as against Federal. I make this affidavit based upon personal knowledge and my review of Beys documents and the file maintained by this office. I am fully familiar with the facts and circumstances set forth herein.

      2.    This motion and the underlying litigation arises from alleged sums due Industrial Window Corp. ("IWC"), for providing certain labor, materials and equipment for the installation of steel assemblies and curtain wall in connection with the construction project identified as

Contract No. 20040018658 – CAPIS ID No. LM001SCHO – Schomburg Center for Research in Black Culture – General Construction – Contract for Renovations & Mechanical Equipment Upgrades – Libraries Unit Requirements Contract (the "Project").

3. For the reasons set forth below and in the accompanying memorandum of law, and as demonstrated by the exhibits annexed hereto, IWC's claim against Federal is barred by the resolution of disputes provisions set forth in the contract between Beys and Hill International, Inc. ("Hill") (hereinafter the "Prime Contract"), which was incorporated by reference into the payment bond issued by Federal and in IWC's subcontract with Beys.

4. On or about the February 11, 2004, The New York City Department of Design and Construction ("DDC") entered into a contract with Hill to solicit bids for and manage various capital improvement projects throughout the City of New York, including the Schomburg Center project. Hill solicited bids from contractors to obtain the services of a general contractor for the Project. Among the documents included in the bid package was a form of contract to be used as between the successful bidder and Hill. That form contract was essentially the same contract between Hill and DDC with minor changes.

5. The general construction work for the Project was awarded to Beys in April of 2005 with a price of $4,569,000.00. Beys subsequently executed the form contract with Hill contained in the bid package (the "Prime Contract"). (A copy of the Prime Contract, which includes the contract between Hill and DDC, is annexed hereto as Exhibit "A"). As part of our contract, Beys, as principal, and Federal, as surety, posted a payment bond (#8189-23-00) (the "Payment Bond") in the penal sum of Beys' contract amount. (A copy of the payment bond is annexed hereto as Exhibit "B").

6. The Payment Bond contains the following language:

> WHEREAS, the Principal is about to enter, or has entered, into a Contract in writing with Hill International, Inc. for Contract No. 20040018658 – CAPIS ID No. LM001SCHO – Schomburg Center for Research in Black Culture – General Construction – Contract for Renovations & Mechanical Equipment Upgrades – Libraries Unit Requirements Contract, a copy of which Contract is annexed to and **hereby made a part of this bond as though herein set forth in full**. (emphasis supplied).

7. On September, 27, 2005, Beys entered into a subcontract with IWC (the "IWC Subcontract") to provide services for the Project, including installation of the curtain wall system. (A copy of the subcontract between Beys and IWC is annexed hereto as Exhibit "C"). The agreed upon subcontract price was $1,258,000.00. Aside from signing the last page, IWC initialed each page of the subcontract.

8. During the course of performing the subcontract work, a change order was proposed by IWC to Beys in the amount of $138,281.43 for costs associated with changing the logistics of unloading and installing the curtain wall at the Project site. Originally, IWC planned to unload stainless steel mullions onto the Lenox Avenue sidewalk using an eighteen-wheel truck and install the glass panels using a Lull machine on the sidewalk. However, the Metropolitan Transit Authority ("MTA") rejected IWC's off-load and installation method, claiming that the sidewalk was incapable of holding the heavy loads from both the heavy machinery and curtain wall materials. As a result, IWC instituted a procedure using a crane and scissor lift to unload and install the curtain wall. IWC contended that this method was significantly more expensive than its original method. After negotiations between IWC, Beys and Hill concerning the costs incurred for the change in procedure, a claim in the amount of $110,978.00 was submitted in

writing to DDC by Hill for the approval of Change Order G055 to cover the cost differential for the utilization of the crane and scissor to conduct the work.

9. By letter dated October 9, 2007, DDC denied Hill's change order request finding that the scope of work was specified under the special requirements, general conditions and summary of work, that the contractor must comply with all rules and regulations, specifications and requirements, and must obtain all necessary permits prior to start of construction work. (A copy of that letter is annexed hereto as Exhibit "D").

10. By letter dated October 16, 2007, Hill forwarded a copy of the DDC letter to Beys and advised us of the right to submit a claim within thirty (30) days as per the Prime Contract. We forwarded the information from Hill to IWC and asked whether they wished to pursue the claim. IWC responded by letter dated November 19, 2007 advising that it was under no obligation to follow the contractually mandated dispute resolution procedure. Instead, IWC filed a mechanic's lien on November 5, 2007 for $256,256.71, which is the amount claimed due in the Complaint.

11. Our counsel served a Demand for Itemized Statement of Lien pursuant to Lien Law §38 on November 6, 2007. Although the verified statement required was never supplied, counsel for IWC did provide a letter dated November 14, 2007 setting forth the details of the lien calculation and reducing the amount claimed to $254,906.95. (A copy of that letter is annexed hereto as Exhibit "E").

12. The letter makes it clear that the subject of the present suit is covered by the alternate dispute resolution provision of the Prime Contract which is incorporated in both the IWC Subcontract and the Payment Bond.

4

13. Section 1.1 of the IWC Subcontract states that the Contract Documents consist of, among other things, the Agreement for Construction between Beys and IWC, the Prime Contract between DDC and Hill, and the contract between Beys and Hill. (See Exhibit "C").

14. Section 2.2 of the IWC Subcontract also defines the term Contract Documents as follows:

> [t]he Contract Documents form the contract between Contractor and Subcontractor. References in the Contract Documents to the "the contract", "this contract" or "the Construction Contract" shall be deemed to include all of the Contract Documents. Reference to "this Agreement" or "the Agreement" shall refer to this instrument, which is one of the Contract Documents.

(See Exhibit "C").

15. We expressly contemplated that any claims under the IWC Subcontract would be resolved exactly as they are resolved under the Prime Contract. Consistent therewith, the IWC Subcontract directly addresses the procedure for disputing claims in section 21.2, which provides that "[t]o the extent that any dispute arises hereunder and a suit is instituted thereby, it shall be brought in accordance with the terms and provisions contained in the Contract Documents." (See Exhibit "C"). It is imperative for any general contractor to have disputes with its subcontractors resolved in the same forum and in the same manner as mandated by the Prime Contract. Change orders typically originate when there is a variation from the work set forth in the contract documents prepared by the owner. If a subcontractor has a claim, that claim is passed on to the owner as the potentially liable party who either made the request for the extra work or created the documents which resulted in the change. Were the general contractor to have a different dispute resolution procedure, it would run the risk of inconsistent verdicts if different methods of dispute resolution were employed. Such an outcome would be grossly unfair to the general

contractor since it had no involvement in the preparation of the contract documents which led to the alleged extra work.

16. The Prime Contract clearly employs an alternate dispute resolution procedure. Section 29.1.2 of the Prime Contract states that Article 29 of the Prime Contract shall apply to disputes arising from the "scope of work delineated by the Contract, the interpretation of Contract documents, the amount to be paid for Extra Work or disputed work performed in connection with the Contract, the conformity of the Contractor's Work to the Contract and the acceptability and quality of the contractor's work. . ." (See Exhibit "A").

16. Section 29.1 of the Prime Contract also states that all disputes arising under or by virtue of the Prime Contract "shall be finally resolved in accordance with the provisions of this article and the PPB [Procurement Policy Board] Rules. The procedure for resolving all disputes of the kind delineated herein shall be the exclusive means of resolving any such disputes." (See Exhibit "A").

17. Pursuant to section 29.4 of the Prime Contract, where a claim is denied, the decision of DDC may be appealed by presenting "its dispute in writing ("Notice of Dispute") to the Commissioner within thirty (30) Days of receiving written notice of the determination or action that is the subject of the dispute." (See Exhibit "A"). As defined by section 1.7 of the Prime Contract, "Commissioner" refers to the Commissioner of the DDC, his successors, or duly authorized representatives. (See Exhibit "A").

18. Upon receipt of an unfavorable determination by the Commissioner, section 29.5 of the Prime Contract states that the claim must be presented "to the Comptroller for his or her review, investigation, and possible adjustment." (See Exhibit "A"). As defined by section 1.9 of

the Prime Contract, the "Comptroller" refers to "the Comptroller of the City of New York, her successors, or duly authorized representatives." (See Exhibit "A").

19. Pursuant to section 29.7 of the Prime Contract, "in the event the claim has not been settled or adjusted by the Comptroller . . . the Contractor, within thirty (30) days thereafter, may petition the Contract Dispute Resolution Board to review the Commissioner's determination." (See Exhibit "A"). Thereafter, "[a]ny party may seek review of the Contract Dispute Resolution Board's decision . . . in a court of competent jurisdiction of the State of New York, County of New York pursuant to Article 78 of the Civil Practice Laws and Rules." (See Exhibit "A", section 29.7.6).

20. Rather than present its dispute concerning the curtain wall change order in writing to the Commissioner, counsel for IWC commenced this action. As reflected in the letter annexed as Exhibit E, this action also seeks to recover for multiple change orders that are currently pending. If these change orders are denied, they too will be subject to the alternate dispute resolution clause. If the pending change orders are approved, they will simply be paid upon Beys' receipt of funds from Hill.

21. The Payment Bond under which IWC has chosen to sue clearly incorporates the Prime Contract which includes the alternate dispute resolution clauses. IWC cannot claim to be surprised at being bound by such provisions since it also expressly agreed to those provisions under its subcontract with Beys. Moreover, such pass through clauses are customary in the construction industry for the reasons set forth in paragraph 15. IWC should not be permitted to sign a subcontract which expressly incorporates the underlying Prime Contract, only to pick and choose the clauses it decides to adhere to, while completely disregarding other bargained for provisions during or after the performance of its agreement.

22. Based upon the foregoing facts and the annexed exhibits, and for the reasons more fully set forth in the accompanying memorandum of law dated February 1, 2008, Federal's motion to dismiss should be granted.

                                                                  **GEORGE KOUGENTAKIS**

Sworn to before me this
\_\_\_\_\_ day of February, 2008


**NOTARY PUBLIC**

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF NASSAU     )

**LISA FRANZINO**, sworn, deposes and says, that deponent is not a party to the action, is over 18 years of age and resides at Seaford, New York.

That on the 1st day of February, 2008, deponent served the within **NOTICE OF MOTION, AFFIDAVIT OF GEORGE KOUGENTAKIS IN SUPPORT OF FEDERAL'S MOTION TO DISMISS and MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S RULE 12(b)6 MOTION TO DISMISS** upon:

Anthony P. Carlucci, Esq. (AC7565)
WELBY, BRADY & GREENBLATT, LLP
Attorneys for Plaintiff
Industrial Window Corp.
11 Martine Avenue, 15th Floor
White Plains, New York 10606
(914) 428-2100

the attorney(s) for the respective parties in this action, at the above address(es) designated by said attorney(s) for that purpose by depositing same enclosed in a postpaid, properly addressed wrapper, in an official depository under the exclusive care and custody of the United States Post Office within the State of New York.

_____
LISA FRANZINO

Sworn to before me this
1st day of February, 2008

_____
NOTARY PUBLIC

ELIZABETH ROBERTS
Notary Public, State of New York
No. 01RO6180429
Qualified in Suffolk County
Commission Expires January 14, 2012