UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
INDUSTRIAL WINDOW CORP,

                        Plaintiff,

          -against-

FEDERAL INSURANCE COMPANY,

                     Defendant.
-----------------------------------------------------------------X

Civ. No.: 07 CV 10959
(Rakoff, J.)

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S RULE 12(b)6 MOTION TO DISMISS

MILBER, MAKRIS, PLOUSADIS
  & SEIDEN, LLP
1000 Woodbury Road, Suite 402
Woodbury, New York 11797
(516) 712-4000
Attorneys for Defendant
Federal Insurance Company

1

## PRELIMINARY STATEMENT

Defendant Federal Insurance Company ("Federal") submits this memorandum of law in support of its motion for an Order pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP") dismissing the complaint upon the ground that the instant action fails to state a cause of action as against Federal because plaintiff is bound to follow the resolution of disputes provisions contained in the contract which is incorporated by reference in the payment bond under which plaintiff seeks to recover; or in the alternative, converting this motion, pursuant to FRCP 12(b), to a motion for summary judgment under Rule 56 of the FRCP and awarding summary judgment dismissing the complaint as against Federal.

Plaintiff, Industrial Window Corp. ("IWC"), has set forth a claim seeking payment under a payment bond issued by Federal, for monies allegedly due and owing to IWC under its subcontract with Beys General Construction Corp. ("Beys"). IWC's claim against Federal is predicated on allegedly providing labor, materials and equipment in connection with the construction project identified as Contract No. 20040018658 – CAPIS ID No. LM001SCHO – Schomburg Center for Research in Black Culture – General Construction – Contract for Renovations & Mechanical Equipment Upgrades – Libraries Unit Requirements Contract (the "Project").

Federal contends that the IWC action should be dismissed as a matter of law, as IWC has failed to exhaust the remedies mandated under the contract between Beys and Hill International, Inc. ("Hill") (the "Prime Contract") which is specifically incorporated by reference in the payment bond issued by Federal. More specifically, IWC has failed and refused to present its alleged dispute to the Commissioner of the New York City Department of Design and Construction ("DDC"), as mandated by the Prime Contract. Therefore, as IWC has failed and

refused to follow the mandatory dispute resolution procedures set forth in its contract, this Court should dismiss its Complaint for failure to state a claim.

## BACKGROUND FACTS

On or about February 11, 2004, the City of New York Department of Design and Construction ("DDC") entered into a contract with Hill to solicit bids for and manage various capital improvement projects throughout the City of New York. One of the projects for which Hill was to perform the aforementioned services was the construction of the Schomberg Center for Research in Black Culture in Brooklyn, New York. Thereafter, Hill solicited bids from contractors to obtain the services of a general contractor for the Project. Among the documents included in the bid package was a form of contract to be used as between the successful bidder and Hill. The form contract included in the bid package was essentially the contract between Hill and DDC with certain minor changes. The general construction work for the Project was awarded to Beys at a price of $4,569,000.00. Beys subsequently executed the form contract contained in the bid package (the "Prime Contract").

As part of the Prime Contract requirements, Beys posted a payment bond from Federal (#8189-23-00) in the penal sum of the contract amount (the "Payment Bond"). The Payment Bond contains the following language:

> WHEREAS, the Principal is about to enter, or has entered, into a Contract in writing with Hill International, Inc. for Contract No. 20040018658 – CAPIS ID No. LM001SCHO – Schomburg Center for Research in Black Culture – General Construction – Contract for Renovations & Mechanical Equipment Upgrades – Libraries Unit Requirements Contract, a copy of which Contract is annexed to and **hereby made a part of this bond as though herein set forth in full**. (emphasis supplied).

On September, 27, 2005, Beys entered into a subcontract with IWC (the "IWC Subcontract") to provide labor and material for the Project, including installation of a curtain wall system. The agreed price for the subcontract work was $1,258,000.00. (See Agreement for Construction between Beys General Construction Corp. and Industrial Window Corp. annexed to the Affidavit of George Kougentakis as Exhibit "C").

During the course of the Project, IWC requested numerous change orders. Among those change orders was one proposed by IWC to Beys in the amount of $138,281.43 for costs allegedly incurred in changing the logistics of unloading and installing curtain wall at the Project site. As originally planned, IWC intended to unload stainless steel mullions onto the Lenox Avenue sidewalk using an eighteen-wheel truck and install the glass panels using a Lull machine on the sidewalk. However, the Metropolitan Transit Authority ("MTA") rejected IWC's off-load and installation method, contending that the sidewalk was incapable of holding the heavy loads from both the heavy machinery and curtain wall materials. As a result, IWC instituted an alternate method using a crane and scissor lift to unload and install the curtain wall. IWC contended that the new method was more costly and that it should be paid for that additional expense through a change order. After negotiations between IWC, Beys and Hill concerning the costs incurred for the change in procedure, a claim in the amount of $110,978.00 was submitted in writing to DDC by Hill for the approval of Change Order G055 to cover the cost differential for the utilization of the crane and scissor to conduct the work.

In response to the submittal requesting Change Order G055 be approved, DDC issued an October 16, 2007 letter to Hill denying the request since "the scope of work is specified under the special requirements, general conditions and summary of work that the contractor must comply with all rules and regulations, specifications and requirements, and must obtain approval

of all necessary permits prior to start of construction work." (See Exhibit "D" to Affidavit of G. Kougentakis).

Article 29 of the Prime Contract, entitled "Resolution of Disputes", outlines a specific procedure for the resolution of disputes of all parties falling under the purview of the Prime Contract.   More specifically, section 29.1.2 of the Prime Contract states that Article 29 shall apply to disputes arising from the "scope of work delineated by the Contract, the interpretation of Contract documents, the amount to be paid for Extra Work or disputed work performed in connection with the Contract, the conformity of the Contractor's Work to the Contract and the acceptability and quality of the Contractor's Work. . ."

Furthermore, section 29.1 of the Prime Contract also states that all disputes arising under or by virtue of the Prime Contract "shall be finally resolved in accordance with the provisions of this article and the PPB [Procurement Policy Board] Rules.   The procedure for resolving all disputes of the kind delineated herein shall be the exclusive means of resolving any such disputes."

Under section 29.4 of the Prime Contract, where a claim is denied, the decision of DDC may be appealed by presenting the dispute "in writing ("Notice of Dispute") to the Commissioner within thirty (30) Days of receiving written notice of the determination or action that is the subject of the dispute."  (See Exhibit "A" to Affidavit of G. Kougentakis).  As defined by section 1.7 of the Prime Contract, "Commissioner" refers to the Commissioner of the DDC, his successors, or duly authorized representatives. (See Exhibit "A" to Affidavit of G. Kougentakis).

If the aggrieved party receives an unfavorable determination by the Commissioner, section 29.5 of the Prime Contract states that the claim must be presented "to the Comptroller for

his or her review, investigation, and possible adjustment." (See Exhibit "A" to Affidavit of G. Kougentakis). As defined by section 1.9 of the Prime Contract, the "Comptroller" refers to "the Comptroller of the City of New York, her successors, or duly authorized representatives." (See Exhibit "A" to Affidavit of G. Kougentakis).

Thereafter, pursuant to section 29.7, "in the event the claim has not been settled or adjusted by the Comptroller . . . the Contractor, within thirty (30) days thereafter, may petition the Contract Dispute Resolution Board to review the Commissioner's determination." (See Exhibit "C" to Affidavit of G. Kougentakis). "Any party may seek review of the Contract Dispute Resolution Board's decision . . . in a court of competent jurisdiction of the State of New York, County of New York pursuant to Article 78 of the Civil Practice Laws and Rules." (See Exhibit "C" to Affidavit of G. Kougentakis, section 29.7.6).

The IWC Subcontract incorporates the Prime Contract, along with the dispute resolution provision. Specifically, Section 1.1 of the IWC Subcontract states that the Contract Documents consist of, among other things, the Agreement for Construction between Beys and IWC, the Prime Contract between DDC and Hill and the contract between Beys and Hill.

Section 2.2 of the IWC Subcontract also defines the term Contract Documents as follows:

> [t]he Contract Documents form the contract between Contractor and Subcontractor. References in the Contract Documents to the "the contract", "this contract" or "the Construction Contract" shall be deemed to include all of the Contract Documents. Reference to "this Agreement" or "the Agreement" shall refer to this instrument, which is one of the Contract Documents.

Section 21.2 of the IWC Subcontract directly addresses the procedure for IWC to dispute claims. That section provides that "[t]o the extent that any dispute arises hereunder and a suit is instituted thereby, it shall be brought in accordance with the terms and provisions contained in the Contract Documents." The Contract Documents of course call for alternate dispute

resolution. It is imperative for any general contractor to have its subcontractors follow the same dispute resolution procedure to which it is bound in order to avoid potentially inconsistent results in situations such as this one involving disputed change orders.

When the decision from DDC denying the curtainwall change was received in October of 2007, IWC refused to proceed with the dispute resolution procedure and instead filed a mechanic's lien for $256,256.71 on November 5, 2007. In a letter sent by counsel for IWC in response to a Demand for Itemized Statement of Lien, it was revealed that the lien included amounts for contract retainage (which is not yet payable) and nine different change orders.[1] (See Letter dated November 14, 2007 from Anthony P. Carlucci, Jr. annexed to the Affidavit of George Kougentakis as Exhibit "E"). Thereafter, in or about December 2007, IWC commenced the action at bar, making a claim in the amount of $254,906.95 on the Payment Bond.

As indicated by its express language, the Prime Contract was incorporated by reference into the Payment Bond. As noted earlier, the Prime Contract was also incorporated by reference in paragraphs 1.1 and 2.2 of the IWC Subcontract. Paragraph 21.2 of the IWC Subcontract requires plaintiff to pursue any claims in the manner set forth in the Prime Contract.

**POINT I**

**LEGAL ARGUMENT**

**THE COMPLAINT MUST BE DISMISSED BECAUSE THE PLAINTIFF IS REQUIRED TO PURSUE ITS CLAIMS THROUGH THE RESOLUTION OF DISPUTES CLAUSE IN THE CONTRACT DOCUMENTS**

IWC's complaint against Federal should be dismissed as a matter of law, as IWC has not exhausted its remedies as set forth in the Prime Contract for the Project. IWC's complaint contains one cause of action, a claim for payment under the Payment Bond, for the payment of

---

[1] The "pending" change orders which do not involve the curtainwall have not yet been approved or disapproved by DDC.

monies allegedly due and owing under the IWC Subcontract. However, as demonstrated below, neither the Payment Bond, nor any of the contract documents permit IWC to pursue remedies through judicial proceedings without first pursuing a resolution within the procedures set forth by the Prime Contract.

As noted above, the Prime Contract sets forth a specific procedure for resolving disputes occurring under the Prime Contract. Section 29.4 of the general conditions states that within thirty days of a denial of a change order by DDC, an aggrieved party must submit a written Notice of Dispute to the Commissioner. Upon the issuance of an unfavorable determination by the Commissioner, an aggrieved party then must present its claim to the Comptroller. (Section 29.5). Upon denial of a claim by the Comptroller, the aggrieved party may appeal to the New York City Policy Procurement Board for a hearing. (Section 29.7). In the event the claimant is unsuccessful before the Board, the Prime Contract affords the right to pursue an Article 78 proceeding in the Courts of the State of New York. (See Exhibit "C" to Affidavit of G. Kougentakis, section 29.7.6).

New York Courts have universally upheld the validity and enforceability of contractual provisions setting forth procedures for resolving disputes under contractual documents. In fact, the New York Court of Appeals directly addressed this issue in <u>Westinghouse Elec. Corp. v. New York City Transit Authority</u>, 82 N.Y.2d 47, 603 N.Y.S.2d 404 (1993), wherein the Court confirmed the viability of contractual provisions specifying procedures for the resolution of disputes. In <u>Westinghouse</u>, the New York Court of Appeals held that:

> Considerable authority thus supports the validity and enforceability of alternative dispute resolution mechanisms, which reflect the informed negotiation and endorsement of the parties. It is firmly established that the public policy of New York State favors and encourages arbitration and alternative dispute resolutions (citations omitted). These mechanisms are "well recognized as an effective

> and expeditious means of resolving disputes between willing
> parties desirous of avoiding the expense and delay frequently
> attendant to the judicial process" (citation omitted).  Thus, "[i]t has
> long been the policy of the law to interfere as little as possible with
> the freedom of consenting parties to achieve that objective"
> (citation omitted).

82 N.Y.2d at 53.

Since the <u>Westinghouse</u> decision, New York Courts have widely dismissed claims where the parties attempted to circumvent contractual resolution of dispute provisions.  In <u>Ferguson Elec. Co. Inc. v. Kendal at Ithaca Inc.</u>, 274 A.D.2d 890, 711 N.Y.S.2d 246 (3d Dept. 2000), the Third Department affirmed the lower court's determination that the dispute procedures in the underlying contract "are mandatory and obligatory" and held that "ADR mechanisms reflecting informed negotiation and endorsement of the parties are valid and enforceable." 274 A.D.2d at 891.  A party choosing "with its business eyes open to accept the terms, specifications and risks" of a contract, including alternate dispute resolution clauses, force that party to be bound by those aspects of the contract.  <u>Id</u>.

In <u>Acme Supply Co., Ltd. v. City of New York</u>, 39 A.D.3d 331, 834 N.Y.S.2d 142 (1st Dept. 2007), the First Department reversed the lower court and held that the failure to comply with a contractual dispute resolution procedure required dismissal of the complaint.  In <u>Acme</u>, the contract between the parties contained "a broad dispute resolution clause that mandated a three-step procedure prior to a claimant seeking judicial review."  <u>Id</u>.  In a unanimous decision, the First Department held that "the complaint should have been dismissed because plaintiff failed to comply fully with the contractual dispute resolution procedure."  <u>Id</u>. at 331, 143.  "A court should not adopt an interpretation which will operate to leave a provision of a contract . . . without force and effect."  <u>Id</u>. at 331, 143.

In Yonkers Contracting Co., Inc. v. Port Authority Trans-Hudson Corp., 208 A.D.2d 63, 621 N.Y.S.2d 642 (2d Dept. 1995), aff'd 87 N.Y.2d 927, 663 N.E.2d 907, 640 N.Y.S.2d 866 (1996), where the plaintiff failed to satisfy a contractual condition precedent to commencing judicial proceedings, the Second Department reversed the lower court and dismissed the complaint with prejudice, while holding that if the Court disregarded a resolution of disputes clause, the Court would be condoning "a practice by which experienced parties negotiate a lengthy and highly technical agreement, only to have one of its legal provisions ignored and undone, by enabling a dissatisfied party to pick and choose among the provisions of its contract in this fashion." Id. at 68, 645. See also JCH Delta Contracting, Inc. v. City of New York, 44 A.D.3d 403, 843 N.Y.S.2d 245 (1st Dept. 2007); Cal Tran Associates, Inc. v. City of New York, 43 A.D.3d 727, 841 N.Y.S.2d 445 (1st Dept. 2007); and Excel Group, Inc. v. New York City Transit Authority, 28 A.D.3d 708, 814 N.Y.S.2d 220 (2d Dept. 2006), wherein the Court dismissed the claims asserted by the plaintiffs where they failed to adhere to the resolution of disputes clauses in their respective contracts.

In the action at bar, IWC seeks to circumvent the procedures outlined in the Contract Documents for the resolution of disputes. The items in dispute in the instant complaint concern matters which fall within the purview of the dispute resolution procedures outlined in the Prime Contract. The procedures mandated by the Prime Contract constitute the sole remedy available to plaintiff in order to resolve disputes. As such, plaintiff has failed to exhaust its remedies, thereby precluding it from commencing the present action. Accordingly, IWC's complaint should be dismissed with prejudice.

## CONCLUSION

Based on the foregoing, defendant Federal Insurance Company respectfully requests that this Court dismiss the complaint of plaintiff, Industrial Window Corp., with prejudice together with such other and further relief as this Court deems just, proper and equitable.

Respectfully Submitted,

MILBER, MAKRIS, PLOUSADIS
& SEIDEN, LLP

By:  Joseph J. Cooke, Esq. (JC 6888)
Attorneys for Defendant
Federal Insurance Company
1000 Woodbury Road, Suite 402
Woodbury, New York 11797
(516) 712-4000
File No.: C0407-0002