WELBY, BRADY & GREENBLATT, LLP
Anthony P. Carlucci, Jr., Esq. [AC7565]
Attorneys for Plaintiff
Westchester Financial Center
11 Martine Avenue, 15th Floor
White Plains, New York 10606
Telephone (914) 428-2100
Telefax (914) 428-2172
ACarlucci@wbgllp.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
INDUSTRIAL WINDOW CORP.,                    Civil Action No. 07-CIV-10959
                                            (Judge Rakoff)
                    Plaintiff,

        -against-                           **AFFIDAVIT OF MICHAEL
                                            VICARIO IN OPPOSITION**
FEDERAL INSURANCE COMPANY,                  **TO MOTION TO DISMISS**

                    Defendants.             ECF Case
------------------------------------------------------------X


STATE OF NEW YORK         }
                          } SS.:
COUNTY OF WESTCHESTER     }

   MICHAEL VICARIO, of full age, being duly sworn, says:

   1.   I am the president of Industrial Window Corp. ("IWC"), the plaintiff in the action. I have personal knowledge of the matters set forth below. I submit this affidavit in opposition to the motion by Federal Insurance Company ("Federal"), the payment bond surety for Beys General Construction Corp. ("Beys") to dismiss IWC's complaint in the action, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

2. The basis for Federal's motion is that the sub-subcontract between Federal's principal, Beys, and IWC in connection with a public works project for the New York City Department of Design and Construction ("Subcontract") (and Federal's Payment Bond) have broad incorporation-by-reference clauses, whereby (according to Federal) IWC's sole avenue for the assertion and resolution of disputes arising from the Subcontract was limited to the alternative dispute resolution ("ADR") procedures in Article 29 of the Prime Contract ("Article 29") between DDC and Hill International, Inc. ("Hill") (the latter being the construction manager for the project in question, which contracted with Beys as general contractor, with Beys in turn entering into the Subcontract with IWC).

3. The ADR procedures in the Prime Contract are those of the Procurement Policy Board Rules ("PPB Rules"). Generally described, the procedures under Article 29 of the Prime Contract require submission of a Notice of Dispute successively to the Commissioner of DDC, the Comptroller of the City of New York, and (failing resolution) to the Contract Dispute Resolution Board ("Board"). No recourse to the courts is permitted, except that the Board's determination may be reviewed by a court, pursuant to Article 78 of the New York Civil Practice Law and Rules. I am advised by counsel that the so-called "Article 78 proceeding" can be maintained only against a public body or public officer, and that the only questions that could be considered in such a proceeding would be whether the Board's determination "was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion."

4. Federal's motion should be denied. There was not any "clear, explicit and unequivocal" adoption of the Article 29 procedures as between Beys and IWC, and indeed to adopt such procedures would have left IWC with no real dispute-resolution mechanism at all.

This is because disputes arising from the Project could involve IWC on one side, and all or any of Beys, Hill, and DDC on the other side. However, a dispute against Beys only certainly could <u>not</u> be adjusted using the PPB Rules/Article 29 procedures, because there is no reason why the Commissioner of DDC (or the Comptroller or the Board) would be willing to entertain disputes between private contracting entities, that involve no claims against or interests of DDC. And, as the PPB Rules contemplate review of a Board determination in an Article 78 proceeding, unmistakably Article 29 envisages its application as being limited to disputes <u>to which a public officer or body</u> is a party. Thus, any notion that a third-tier subcontractor, such as IWC, would agree to resolve potential disputes with the second-tier contractor (a private company) with which it was in privity, by an ADR process <u>plainly designed for use exclusively in connection with claims against DDC,</u> is absurd on its face.

5.  And, if we view an alternate scenario (indeed the one presented in this case) where the sub-subcontractor's claim <u>is</u> in part against DDC, it still makes no sense that IWC would agree to place itself at the mercy of not one, but two, parties occupying positions in the "chain of privity" intermediate between IWC and DDC (namely, Beys and Hill). Generally, a sub-subcontractor cannot assert claims against the owner directly. To overcome the lack of privity with the owner, IWC would have to secure a "liquidating agreement" with Beys, whereby Beys admitted liability to IWC and IWC agreed to liquidate the amount of that liability to such amount, if any, as Beys might recover in its behalf. Presumably, *in addition to* Beys admitting liability and entering into a liquidating agreement with IWC, Hill (as the party in direct privity with DDC) would have to bridge the additional "privity gap" by entering into a similar agreement with Beys. In any case, the Subcontract does not contain, nor require Beys to enter into, any liquidating agreement. Accordingly, if Article 29 were the sole recourse in any dispute

3

in which DDC was a party from which relief was sought by IWC, such claim could go nowhere without a purely voluntary act by, certainly, Beys (and, probably, by Hill as well).[1]

6. As stated in Federal's moving papers, the construction project in question was DDC Contract No. 20040018658, CAPIS ID No. LM001SCHO, Schomburg Center for Research in Black Culture — General Construction — Contract for Renovations & Mechanical Equipment Upgrades — Libraries Unit Requirements Contract. DDC, as owner, contracted with Hill, as construction manager, to solicit bids for and to manage capital improvement projects including the Project. Hill, in turn, contracted with Beys, as general contractor for the Project. Beys furnished a payment bond (#8189-23-00) with Federal as surety, and Beys, as general contractor, entered into the subcontract with IWC ("Subcontract") for certain labor and materials, notably the installation of a curtain wall system.

7. Generally as stated in ¶ 8 of the moving Affidavit of George Kougentakis ("Kougentakis Aff."), the MTA refused to permit IWC to unload stainless steel mullions onto the sidewalk on Lenox Avenue using an eighteen-wheel truck, and to install glass panels using a Lull machine on the sidewalk. When advised that MTA deemed the sidewalk to be incapable of bearing the loads from the heavy machinery and curtain wall materials, it was necessary to devise an alternative method, using a crane and scissor lift, to unload and install the curtain wall. Due to the increased cost of the crane and scissor lift procedure, IWC proposed to Beys a change order in the amount of $138,281.43. Following discussions among IWC, Beys and Hill regarding the costs incurred, a claim in the amount of $110,978.00 was submitted *by Hill to*

---

[1] And, even in the case in which Hill might, merely as a matter of courtesy, act as an informal conduit for the transmittal of "claims" on behalf of IWC, absent a claimant with formal standing to pursue the claim up through the ADR process and, if need be, in an Article 78 proceeding, there is no reason to think that DDC would not reject any and all such toothless "claims" as a matter of course.

*DDC*,[2] requesting approval of a change order to cover the cost differential in the adjusted amount.

8.  Generally as set forth in the Kougentakis Aff. at ¶¶ 9-10, DDC denied Hill's request for approval of a change order, finding that the scope of work was specified under the special requirements, general conditions and summary of work and, essentially, that costs flowing from the contractual duty to comply with all rules and regulations and obtain all needed permits made the MTA's veto of IWC's plan a risk not to be borne by DDC.

9.  The sub-subcontract between Beys and IWC (Exhibit C to Federal's moving papers) ("Subcontract") defines (in Article 1.1) the "Contract Documents" to include the following:

   a.  This Agreement;

   b.  The Specifications and Drawings prepared by Architects/Planners for DDC/HILL INTERNATIONAL, INC.

   c.  The Prime Contract between DDC and Hill International, Inc.

   d.  Contract #200400186583[3]

   e.  Change Orders, if issued;

   f.  General Conditions, Supplementary Conditions, Special Conditions;

   g.  All provisions required by law to be inserted in this Contract, whether actually inserted or not;

   h.  Prevailing wage rate decisions;

   i.  Safety Manual;

---

[2] Note the observance of the "chain of privity," with Hill, not IWC, tendering the claim to DDC.

[3] Whether this reference is supposed to denote, as one of the "Contract Documents," the contract between Hill and Beys is open to doubt, among other things as generally the contracts bearing New York City agency contract numbers are the contracts to which the agency in question is a party.

      j.      Addendum #1 dated March 24, 2005;
             Addendum #2 dated March 28, 2005
             Addendum #3 dated March 29, 2005

10. In passing, I note that the Subcontract identifies as the "Prime Contract" the contract between DDC and construction manager Hill, whereas Federal's motion papers identify, as the "Prime Contract," the contract between Hill and Federal's principal, Beys. While Federal's motion papers state that "[t]he form contract included in the bid package was essentially the contract between Hill and DDC with certain minor changes," Federal's Brief at 3, Federal's motion papers do not annex a copy of the DDC-Hill contract. While the latter may contain provisions identical to the dispute-resolution provisions of Article 29 contained in the next-tier contract between Hill and Beys, the "Prime Contract," supposedly incorporated by reference in the Subcontract, does not appear to be annexed as part of Federal's motion.

11. The contract incorporated by reference "as though herein set forth in full" in Federal's Payment Bond is not the "Prime Contract" between DDC and Hill, but the contract between Hill and Beys.

12. Federal's sole argument (and thus the entire basis for its motion) is that:

> [T]the IWC action should be dismissed as a matter of law, as IWC has failed to exhaust the remedies mandated under the contract between Beys and [Hill] which is specifically incorporated by reference in the payment bond issued by Federal. More specifically, IWC has failed and refused to present its alleged dispute to the commissioner of [DDC] as mandated by the Prime Contract.[4] Therefore, as IWC has failed and refused to follow the mandatory dispute resolution procedures set forth in its contract, this Court should dismiss its complaint for failure to state a claim.

Federal's Brief, pp. 2-3 (emphasis added).

---

[4] While this certainly is not IWC's primary argument, again the "Prime Contract," according to the Payment Bond is the Hill-Beys contract, whereas the "Prime Contract" identified in the Subcontract is that between DDC and Hill.

13. While IWC vehemently disagrees with the answer proposed by Federal to the critical inquiry, we agree that (for purposes of this motion) the key issue is whether the Article 29 dispute-resolution provisions are incorporated in the Subcontract, and made resort to the PPB Rules procedures (submission to the Commissioner, etc.) IWC's sole resort, barring a lawsuit against Beys (and/or against Federal, as Beys' payment bond surety).

14. From a closer review of the Subcontract document (Exhibit C to Federal's motion papers) the following may be noted. First, together with the above list of "Contract Documents," what Federal claims to make the Article 29 dispute resolution procedures a part of the Subcontract, is Subcontract Article 21.2, "Choice of Law and Forum," which provides:

> This Agreement shall be governed by and interpreted under the laws of the State of New York. <u>To the extent that any dispute arises hereunder and a suit is instituted thereby, it shall be brought in accordance with the terms and provisions contained in the Contract Documents.</u> The Subcontractor shall insert a provision identical to this one into all of its subcontracts for this Project. [Emphasis added].

*See* Federal's Brief, at pp. 6-7 (foregoing Section 21.2 of the IWC Subcontract "directly addresses the procedure for IWC to dispute claims;" Contract Documents "of course call for alternative dispute resolution").

15. Subcontract Article 21.3, "Limitations on Actions," states:

> No action or proceeding shall lie or shall be maintained by Subcontractor against the contractor and unless such action shall be commenced within one (1) year after the date payment is mailed or otherwise made in respect of the final Application for Payment or, if this contract is Terminated, unless such action or proceeding is commenced within six (6) months after the date of such Termination.

16. Subcontract Article 21.7, "Entire Agreement" reads in its entirety as follows:

> This Agreement is complete in and of itself and any and all prior agreements, understandings and communications, whether oral or written, are deemed merged herein and superseded hereby and consists of 33 pages in this Agreement and attached Exhibits. This Agreement specifically incorporates by reference herein all of the Contract documents, including,

but not limited to, the Plans and Specifications issued by , (sic) and the provisions and terms of all existing, or issued during the course of this Agreement, (sic) standard details, standard documents, standard drawings, and all applicable provisions which govern the installation and operation of all work. This Agreement also incorporates all of the standard and required provisions contained and applicable to all public work which has (sic) been issued by the various departments, agencies or bureaus [without limitation] which are or may become applicable to the Subcontractor during the course of this Agreement. The Subcontractor shall be responsible for the securing of the most up to date documents from and all applicable agencies which may affect the work in question and which is (sic) being provided by the Subcontractor. Copies of all such documents, relied on by the Subcontractor or which are applicable to him, shall be provided immediately to the Contractor upon receipt by the Subcontractor. Any document[s]. rules, regulations which are relied on by the contractor, which are in conflict with this Subagreement, or any provisions or terms thereof or which are in conflict with any Contract document, whether such document is enumerated or described or not, shall not be applicable unless such document[s], rules or regulations are provided to the contractor at or upon receipt by the subcontractor.

17.   The following critical <u>omissions</u> from the Subcontract document itself should be carefully noted. First, no express reference occurs anywhere in the Subcontract to the submission of disputes to (or the resolution of any disputes by) the Commissioner, the Comptroller, or the Contract Dispute Resolution Board. None of the terms, "alternative dispute resolution," "PPB Rules," "Article 78," "Notice of Claim," "Article 29" (with reference to either of the DDC-Hill contract or the Hill-Beys contract) (or their equivalents or synonyms) appear in the Subcontract.

18.   Second, nothing in the Subcontract establishes or references any distinctions regarding how disputes are to be resolved, according as to whether the party or parties against whom the Subcontractor may assert a claim or claims include Hill and/or DDC or, by way of contrast, is limited solely to Beys.

19.   If we hypothesize a dispute arising out of the Subcontract, but one in which the parties to the dispute were IWC and Beys only (with claims by IWC against Beys and remedies

sought only against Beys, to the exclusion of DDC) nothing in the Subcontract provides so much as a hint regarding how such dispute might be referred to the Commissioner, or onward up the line under the PPB procedures, or why the Commissioner, the Comptroller, the Contract Dispute Resolution Board or Supreme Court, in an Article 78 proceeding, would entertain such a dispute.

20.     Nothing in the Subcontract provides that, in the event of a claim or dispute where the party or parties in interest adverse to the Subcontractor include(s) DDC, Beys will make a *pro forma* admission of liability to IWC and pass IWC's claim "upstream" to DDC — that is, to enter into a so-called "liquidating agreement" with IWC, to permit its dispute to be addressed by DDC, notwithstanding the lack of contractual privity as between DDC and IWC.

21.     Nowhere in the Subcontract is it explained how, given as not only Beys, but Hill, occupies a position in the "chain of privity" between IWC and DDC, Hill (a party not contracting with IWC) could be required itself to enter into a "liquidating agreement," in order to get a claim by IWC determined by the Commissioner (or addressed in any fashion by DDC).

22.     I note that the Subcontract is not a document hammered out in negotiations between IWC and Beys; it was prepared solely by Beys, and such limited negotiation as took place did not address any dispute resolution procedures.

23.     While the implications of all of the foregoing are discussed at greater length in IWC's Brief annexed, essentially IWC's arguments in opposition to the motion are these. First, IWC's understanding is that under the law of New York, an alternative dispute resolution agreement (like an arbitration agreement) must be "clear, explicit and unequivocal," not depending upon "implication or subtlety," and that absent a clear and express intent, a party may not be compelled to submit its claim to alternative dispute resolution. Certainly, there is no clear, explicit and unequivocal agreement on the subject of ADR as between IWC and Beys, and

it is counter-intuitive to say the least that these parties, both private companies and neither of them in direct privity with DDC, would adopt procedures to resolve their disputes that are plainly intended only for disputes involving the City.

24. IWC's second argument is that the Subcontract is ambiguous on the subject of how disputes are to be resolved with Subcontract Article 21.3, which contemplates an "action or proceeding," while fixing abbreviated limitations periods (one year from final payment, or six months from termination) being irreconcilable with the Article 29 procedures. Like any contract, the Subcontract here is subject to the rule that ambiguous provisions will be construed against the party that drafted the agreement, in this case Beys.

25. I have already alluded to a further argument in opposition to Federal's motion, which flows from the rules that, ordinarily, a sub-subcontractor cannot sue the owner or any other party with which it is not in contractual privity, and a prime contractor will not be responsible, vis-à-vis a subcontractor, for matters not caused by some agency or circumstance under the prime contractor's direction or control. N.Y. CPLR Article 78 is entitled, "Proceeding Against Body or Officer." In addition to affording a very limited scope of review, the "Article 78 proceeding" will lie only against a public body or officer. Thus, as Beys is a private entity, and not a "body or officer" within the meaning of the statute, if we assume the applicability of Article 29's ADR provisions to the Subcontract between IWC and Beys, the remedy of an Article 78 proceeding is illusory (at least as to the subset of potential disputes that might involve IWC and Beys, but not DDC) as IWC would not be able to maintain an Article 78 proceeding against Beys.

26. As for a "liquidating agreement," I am advised by counsel that liquidating agreements do not come into existence through inference. While such an agreement may be

incorporated in a subcontract (although I do not find one in the Subcontract here) or may be in a separate written agreement, one will not be presumed. And, where there is no liquidating agreement, in addition to the bar of the lack of privity, which prevents the subcontractor (here, IWC) from suing the owner (DDC) neither will the general contractor (Beys) be authorized to bring a "pass-through" action in IWC's behalf.

27.   Thus, to accept the contract interpretation advanced by Beys, and bar any action by IWC against Beys (or Federal, Beys' surety) and confine available remedies to those provided under the PPB Rules and Article 29 is effectively to give IWC no dispute resolution remedies as against Beys (as there is no basis to bring City employees such as the Commissioner, the Comptroller, et al. into a dispute as between two private construction entities, nor will an Article 78 proceeding lie as against Beys).

28.   And, even where (as here) IWC's primary grievance is against the DDC (both Beys and Hill having recommended approval of IWC's change order):

- IWC is barred from suing DDC directly;

- IWC finds no liquidating agreement in its Subcontract with Beys;

- In the absence of a requirement that Beys (and, presumably, Hill *in addition to* Beys) admit liability (*i.e.*, enter into a liquidating agreement) and champion IWC's claims against DDC, Article 29 remedies are effectively unavailable, and of no use to IWC.

29.   Thus, where a party in IWC's position has grievances or claims that are wholly or in part against the public owner, limiting its dispute resolution options to those under Article 29 requires an act of grace first, on the part of Beys, and second, on the part of Hill. This is because two liquidating agreements are necessary, there being two "gaps" in the chain of privity that must be "bridged," if the third-tier contractor, IWC, is to have a meaningful remedy, under the PPB Rules, vis-à-vis the owner. Leaving aside the impracticability of requiring reliance on a

gratuitous act on the part of Hill (a non-party to IWC's contract with Beys) even as to Beys, a construction of the Subcontract that excludes remedies other than those provided under Article 29 in IWC's understanding is inconsistent with the rule that disfavors construing contract provisions in such manner as to place either party at the mercy of the other.

30. For the foregoing reasons, and those stated in IWC's Brief, annexed, Federal's motion to dismiss should be in all respects denied.

_____
MICHAEL VICARIO

Sworn to and subscribed
before me this _21_ day of
February 2008.

_____
Notary Public

```
LYNN LEE CIANO
Notary Public - State of New York
NO. 01CI6100264
Qualified in Dutchess County
My Commission Expires 10/14/11
```