UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
INDUSTRIAL WINDOW CORP.,

                           Plaintiff,

         -against-

FEDERAL INSURANCE COMPANY,

                      Defendants.
-----------------------------------------------------------------X

Civil Action No. 07-CIV-10959
(Judge Rakoff)

**PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION**
**<u>MOTION TO DISMISS</u>**

WELBY, BRADY & GREENBLATT, LLP
Attorneys for Plaintiff
Westchester Financial Center
11 Martine Avenue, 15th Floor
White Plains, New York 10606
Tel. (914) 428-2100

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT ..................................................................................... 1

COUNTER-STATEMENT OF FACTS PRESENTED ........................................................... 2

ARGUMENT

    IWC'S SUBCONTRACT WITH BEYS DOES
    NOT INCORPORATE THE "ARTICLE 29" DISPUTE
    RESOLUTION PROCEDURES ................................................................................ 7

    A.    IWC's Subcontract With Beys Does Not
        Include a "Clear, Explicit and Unequivocal"
        Incorporation of Alternative Dispute
        Resolution Procedures in Beys' Contract
        With Hill ................................................................................................ 7

    B.    Under the Rule of *Contra Proferentum*, the
        Subcontract Must Be Construed to Permit an
        Action Against Beys Commenced Within the
        Limitations Period of Subcontract Article 21.3 .................................. 9

    C.    A Reading of the Subcontract to Incorporate
        Article 29 Should Be Rejected, Under the Rule
        That Disfavors Construing Contract Provisions
        To Place One Party at the Mercy of the Other ................................. 12

CONCLUSION ...................................................................................................... 16

# TABLE OF AUTHORITIES

PAGE

CASES:

Albany Sav. Bank, FSB v. Halpin, 117 F.3d 669 (2d Cir. 1997) ............................................ 16

Barry, Bette & Led Duke Inc. v. State of New York, 240 A.D.2d 54,
669 N.Y.S.2d 741 (3d Dep't), motion for leave to appeal denied,
92 N.Y.2d 804, 667 N.Y.S.2d 779 (1998) .............................................. 14

Bazin v. Walsam 240 Owner, LLC, 18 Misc.3d 290,
2007 WL 3375821 (Sup. Ct. N.Y. Co. 2007) .......................................... 10

Bovis Lend Lease LMB Inc. v. GCT Venture, Inc., 285 A.D.2d 68,
728 N.Y.S.2d 25 (1st Dep't 2001) .......................................... 14

Bubonia Holding Corp. v. Jeckel, 189 A.D.2d 957, 592 N.Y.S.2d 499
(3d Dep't 1993) .......................................... 12

City of New York v. Evanston Ins. Co., 39 A.D.3d 153,
830 N.Y.S.2d 299 (2d Dep't 2007) .......................................... 10

Components Direct, Inc. v. European American Bank and Trust Co.,
175 A.D.2d 227, 572 N.Y.S.2d 359 (2d Dep't 1991) ............................ 15

Comras v. Comras, 195 A.D.2d 358, 600 N.Y.S.2d 61 (1st Dep't 1993) ................................ 15

Crimmins Contr. Co. v. City of New York, 74 N.Y.2d 166,
544 N.Y.S.2d 580, 542 N.E.2d 1097 (1989) .......................................... 8

Gelco Builders & Burjay Const. Co. v. United States, 369 F.2d 992,
177 Ct. Cl. 1025 (1966) .......................................... 10

General Railway Signal Corp. v. L. K. Comstock & Company, Inc.,
254 A.D.2d 759, 678 N.Y.S.2d 208 (4th Dep't 1998),
leave dismissed, 93 N.Y.2d 881, 689 N.Y.S.2d 424 (1999) ............................ 7, 8, 9

Hard Rock Café International (USA) Inc. v. Morton, 1999 WL 717995
(S.D.N.Y. 1999) .......................................... 10

Highland Mechanical Inds., Inc. v. Herbert Construction Co., Inc.,
216 A.D.2d 161, 628 N.Y.S.2d 655 (1st Dep't 1995) ............................ 11

PAGE

I.T.R.I. Masonry Corp. v. State of New York, 21 A.D.3d 990,
801 N.Y.S.2d 396 (2d Dep't 2005) ........................................................................ 14

Jacobsen v. Weiss, 260 A.D.2d 308, 689 N.Y.S.2d 75
(1st Dep't 1999) ........................................................................................................ 15

Kapson Construction Corp. v. ARA Plumbing & Heating Corp.,
227 A.D.2d 484, 642 N.Y.S.2d 701 (2d Dep't 1996) .............................................. 10

Mangano v. Altmeyer, 32 Misc.2d 841, 225 N.Y.S.2d 379
(Sup. Ct. N.Y. Co. 1962) .......................................................................................... 13

Matter of Aerotech World Trade v. Excalibur Sys., 236 A.D.2d 609,
654 N.Y.S.2d 386 (2d Dep't), lv. denied,   90 N.Y.2d 812,
666 N.Y.S.2d 101, 688 N.E.2d 1383 (1997) ............................................................. 8

Matter of Marlene Indus. Corp., 45 N.Y.2d 327, 408 N.Y.S.2d 410,
380 N.E.2d 239 (1978) .............................................................................................. 8

North Moore Street Developers, LLC. v. Meltzer/Mandl
Architects, P.C., 23 A.D.3d 27, 799 N.Y.S.2d 485 (1st Dep't 2005) ..................... 13

Oakgrove Const., Inc. v. Genessee Valley Nurseries, Inc.,
10 Misc.3d 1053(A), 2005 WL 3240283 (Sup. Ct. Erie Co. 2005),
appeal dismissed, 39 A.D.3d 1283, 832 N.Y.S.2d 860 (2007) ........................... 9, 10

State of New York v. Home Indem. Co., 66 N.Y.2d 669,
495 N.Y.S.2d 969 (1985) ......................................................................................... 10

Surdell v. City of Oswego, 91 Misc.2d 1041, 399 N.Y.S.2d 173
(Sup. Ct. Oswego Co. 1977) ..................................................................................... 13

Triangle Sheet Metal Works, Inc. v. James H. Merritt and Co.,
79 N.Y.2d 801, 580 N.Y.S.2d 171 (1991) ............................................................... 13

United States v. Seckinger, 297 U.S. 203, 90 S.Ct. 880 (1970) ............................. 10

PAGE

STATUTES:

Civil Practice Law and Rules, Article 78   .................................................  2, 6, 9, 11, 13, 14, 15

Civil Practice Law and Rules 217   .........................................................................................  11

Civil Practice Law and Rules 511   ...........................................................................................  8

Civil Practice Law and Rules  7803   .....................................................................................  13

Federal Rules of Civil Procedure, R. 12(b)(6)   ...........................................................................  1


RULES AND REGULATIONS:

New York City Procurement Policy Board Rules   .................................................  2, 4, 6, 11, 14

Postner & Rubin, New York Construction Law Manual, § 3:23   ...........................................  14

Welby, Brady & Greenblatt, LLP
Anthony P. Carlucci, Jr., Esq. [AC7565]
Attorneys for Plaintiff
Westchester Financial Center
11 Martine Avenue, 15th Floor
White Plains, New York 10606
Telephone (914) 428-2100
Telefax (914) 428-2172
ACarlucci@wbgllp.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

INDUSTRIAL WINDOW CORP.,

Plaintiff,

-against-

FEDERAL INSURANCE COMPANY,

Defendants.

-------------------------------------------------------------------X

Civil Action No. 07-CIV-10959
(Judge Rakoff)

**PLAINTIFF'S BRIEF IN
OPPOSITION TO MOTION
TO DISMISS**

ECF Case

## PRELIMINARY STATEMENT

Plaintiff, Industrial Window Corp. ("IWC"), by its attorneys Welby, Brady & Greenblatt,

LLP, submit this brief in opposition to the motion by defendant, Federal Insurance Company

("Federal") to dismiss the action pursuant to Fed. R. Civ. P. 12(b)(6).

## COUNTER-STATEMENT OF FACTS PRESENTED

The Court is referred to the Affidavit of Michael Vicario, sworn to on February 21, 2008.

Whereas Federal's motion denotes as the "Prime Contract" the contract between Hill

International, Inc. ("Hill") and Federal's principal, Beys General Construction Corp. ("Beys") in

connection with New York City Department of Design and construction ("DDC") Contract No.

20040018658, CAPIS ID No. LM001SCHO, Schomburg Center for Research in Black Culture — General Construction — Contract for Renovations & Mechanical Equipment Upgrades — Libraries Unit Requirements Contract (the "Project"), as stated in Federal's Brief (at p. 4) DDC, as owner, contracted with Hill, as construction manager, to solicit bids for and to manage capital improvement projects including the Project. Hill, in turn, contracted with Beys, as general contractor for the Project. Beys furnished a payment bond (#8189-23-00) with Federal as surety, and Beys, as general contractor, entered into the subcontract with IWC ("Subcontract") for certain labor and materials, notably the installation of a curtain wall system. Thus, in the "chain of privity," plaintiff IWC is actually three, and not two, "links" remote from the owner, DDC.

The contract annexed to Federal's moving papers as Exhibit A, and denoted as the "Prime Contract," appears to be not Hill's contract with DDC, but Hill's second-tier contract with Beys. It is this contract which, so far as appears from the papers submitted in support of the motion, contains as Article 29 provisions requiring disputes to be resolved pursuant to the Procurement Policy Board ("PPB") Rules. These Rules, familiar in New York City public works contracts, require submission, first, to the Commissioner; second, to the City Comptroller, and then to the Contract Dispute Resolution Board, whose decision is reviewable in a proceeding under Article 78 of the N.Y. Civil Practice Law and Rules.[1]

The sub-subcontract between Beys and IWC (Exhibit C to Federal's moving papers) defines (in Article 1.1) the "Contract Documents" to include the following:

  a.    This Agreement;

  b.    The Specifications and Drawings prepared by Architects/Planners
        for DDC/HILL INTERNATIONAL, INC.

---

[1] For convenience of reference, in this Brief we will employ the term "Article 29 procedures" to denote the PPB Rules procedures, as adopted in Article 29 of the Hill-Beys contract annexed to Federal's motion papers as Exhibit A (and as the same may be referred to in the contract between DDC and Hill).

c.    The Prime Contract between DDC and Hill International, Inc.

d.    Contract #20040018658[2]

e.    Change Orders, if issued;

f.    General    Conditions,    Supplementary    Conditions,    Special
      Conditions;

g.    All provisions required by law to be inserted in this Contract,
      whether actually inserted or not;

h.    Prevailing wage rate decisions;

i.    Safety Manual;

j.    Addendum #1 dated March 24, 2005;
      Addendum #2 dated March 28, 2005
      Addendum #3 dated March 29, 2005

Thus, strictly speaking, the Subcontract identifies as the "Prime Contract" the contract

between DDC and construction manager Hill, whereas Federal's motion papers identify, as the

"Prime Contract," the contract between Hill and Federal's principal, Beys.    While Federal's

motion papers state that "[t]he form contract included in the bid package was essentially the

contract between Hill and DDC with certain minor changes," Federal's Brief at 3, we do not

actually find, in Federal's motion papers, a copy of the DDC-Hill contract.    While it is entirely

possible that the latter contains provisions identical to the dispute-resolution provisions of Article

29 contained in the next-tier contract between Hill and Beys, the "Prime Contract," supposedly

incorporated by reference in the Subcontract, does not appear to be annexed as part of Federal's

motion.

---

[2] Whether this reference is supposed to denote, as one of the "Contract Documents," the contract between
Hill and Beys is open to doubt, among other things as generally the contracts bearing New York City
agency contract numbers are the contracts to which the agency in question is a party.

3

The contract incorporated by reference "as though herein set forth in full" in Federal's

Payment Bond is <u>not</u> the "Prime Contract" between DDC and Hill, but the contract between Hill

and Beys.

Federal's argument is that:

> [T]the IWC action should be dismissed as a matter of law, as IWC has
> failed to exhaust the remedies mandated under the contract between Beys
> and [Hill] which is specifically incorporated by reference in the payment
> bond issued by Federal. More specifically, IWC has failed and refused to
> present its alleged dispute to the commissioner of [DDC] as mandated by
> the Prime Contract.[3]  Therefore, as IWC has failed and refused to follow
> the mandatory dispute resolution procedures set forth <u>in its contract</u>, this
> Court should dismiss its complaint for failure to state a claim.

Federal's Brief, pp. 2-3 (emphasis added).

Although IWC and Federal propose opposing answers to the critical inquiry, they are in

agreement that the dispositive issue is whether the Article 29 dispute-resolution provisions are

incorporated in the Subcontract, and made resort to the PPB Rules procedures (submission to the

Commissioner, etc.) IWC's sole resort, barring a lawsuit against Beys (and/or against Federal, as

Beys' payment bond surety).

Reviewing the Subcontract document more closely, we note the following.

What Federal couples to the list of "Contract Documents" as effectively importing the

Article 29 dispute resolution procedures into the Subcontract, is Subcontract Article 21.2,

"Choice of Law and Forum," which provides:

> This Agreement shall be governed by and interpreted under the laws of
> the State of New York.  <u>To the extent that any dispute arises hereunder
> and a suit is instituted thereby, it shall be brought in accordance with the
> terms and provisions contained in the Contract Documents.</u>    The

---

[3] While this certainly is not IWC's primary argument, again the "Prime Contract," according to <u>the Payment Bond</u> is the Hill-Beys contract, whereas the "Prime Contract" identified in <u>the Subcontract</u> is that between DDC and Hill.

Subcontractor shall insert a provision identical to this one into all of its subcontracts for this Project. [Emphasis added].

*See* Federal's Brief, at pp. 6-7 (foregoing Section 21.2 of the IWC Subcontract "directly addresses the procedure for IWC to dispute claims;" Contract Documents "of course call for alternative dispute resolution").

Subcontract Article 21.3, "Limitations on Actions," states:

No action or proceeding shall lie or shall be maintained by Subcontractor against the contractor <u>and</u> unless such action shall be commenced within one (1) year after the date payment is mailed or otherwise made in respect of the final Application for Payment or, if this contract is Terminated, unless such action or proceeding is commenced within six (6) months after the date of such Termination.

(Emphasis added).[4]

Subcontract Article 21.7, "Entire Agreement" reads in its entirety as follows:

This Agreement is complete in and of itself and any and all prior agreements, understandings and communications, whether oral or written, are deemed merged herein and superseded hereby and consists of 33 pages in this Agreement and attached Exhibits. This Agreement specifically incorporates by reference herein all of the Contract documents, including, but not limited to, the Plans and Specifications issued by , (sic) and the provisions and terms of all existing, or issued during the course of this Agreement, (sic) standard details, standard documents, standard drawings, and all applicable provisions which govern the installation and operation of all work. This Agreement also incorporates all of the standard and required provisions contained and applicable to all public work which has (sic) been issued by the various departments, agencies or bureaus [without limitation] which are or may become applicable to the Subcontractor during the course of this Agreement. The Subcontractor shall be responsible for the securing of the most up to date documents from and all applicable agencies which may affect the work in question and which is (sic) being provided by the Subcontractor. Copies of all such documents, relied on by the Subcontractor or which are applicable to him, shall be provided immediately to the Contractor upon receipt by the Subcontractor.

---

[4] While, read as a whole, Subcontract Article 21.3 obviously allows actions against the Contractor (subject to shortened limitations periods) syntactically, the highlighted "and" sets off the preceding language, *viz.,* "No action or proceeding shall lie or shall be maintained by Subcontractor against the Contractor" and arguably could be read as prohibiting actions against Beys altogether.

> Any document[s]. rules, regulations which are relied on by the contractor, which are in conflict with this Subagreement, or any provisions or terms thereof or which are in conflict with any Contract document, whether such document is enumerated or described or not, shall not be applicable unless such document[s], rules or regulations are provided to the contractor at or upon receipt by the subcontractor.

The following critical <u>omissions</u> from the Subcontract document itself should be carefully noted. Due consideration of their absence, and the necessary implications of their absence, lays waste to Federal's argument.

First, no express reference occurs anywhere in the Subcontract to the submission of disputes to (or the resolution of any disputes by) the Commissioner, the Comptroller, or the Contract Dispute Resolution Board. None of the terms, "alternative dispute resolution," "PPB Rules," "Article 78," "Notice of Claim," "Article 29" (with reference to either of the DDC-Hill contract or the Hill-Beys contract) (or their equivalents or synonyms) appear in the Subcontract.

Second, nothing in the Subcontract establishes or references any distinctions regarding how disputes are to be resolved, according as to whether the party or parties against whom the Subcontractor may assert a claim or claims include Hill and/or DDC or, by way of contrast, is limited solely to Beys.

If we hypothesize a dispute arising out of the Subcontract, but one in which the parties to the dispute were IWC and Beys only (with claims by IWC against Beys and remedies sought only against Beys, to the exclusion of DDC) neither anything in the Subcontract, nor anything in Federal's motion papers, provides so much as a hint regarding how such dispute might be referred to the Commissioner or onward up the line under the PPB procedures, or why the Commissioner, the Comptroller, the Contract Dispute Resolution Board or Supreme Court, in an Article 78 proceeding, would entertain such a dispute.

6

Nothing in the Subcontract provides that, in the event of a claim or dispute where the party or parties in interest adverse to the Subcontractor include(s) DDC, Beys will make a *pro forma* admission of liability to IWC and pass IWC's claim "upstream" to DDC — that is, to enter into a so-called "liquidating agreement" with IWC, to permit its dispute to be addressed by DDC, notwithstanding the lack of contractual privity as between DDC and IWC.

Nowhere in the Subcontract is it explained how, given as not only Beys, but Hill, occupies a position in the "chain of privity" between IWC and DDC, Hill (a party not contracting with IWC) could be required itself to enter into a "liquidating agreement," in order to get a claim by IWC determined by the Commissioner (or addressed in any fashion by DDC).

ARGUMENT

IWC's SUBCONTRACT WITH BEYS DOES
NOT INCORPORATE THE ARTICLE 29 DISPUTE
RESOLUTION PROCEDURES

In light of the foregoing, under a slew or familiar rules governing "flow down" provisions in construction subcontracts and more general rules of contract interpretation, Federal's argument (and its motion) must fail.

**A.     IWC's Subcontract With Beys Does Not Include a "Clear, Explicit and Unequivocal" Incorporation of Alternative Dispute Resolution Procedures in Beys' Contract With Hill**

First of all, like an arbitration agreement, under New York law[5] an alternative dispute resolution agreement must be "clear, explicit and unequivocal" and must not "depend upon implication or subtlety." As the Appellate Division, Fourth Department stated in a case squarely on point, General Railway Signal Corp. v. L. K. Comstock & Company, Inc., 254 A.D.2d 759, 678 N.Y.S.2d 208 (4th Dep't 1998), leave dismissed, 93 N.Y.2d 881, 689 N.Y.S.2d 424 (1999):

---

[5] Which law applies, pursuant to Subcontract Article 21.2 quoted *supra.*

Although the prime contract specifically provides for alternative dispute resolution regarding disputes between Comstock and the Authority, the subcontract does not contain similar language regarding a procedure for resolving disputes between plaintiff and Comstock. "An alternative dispute resolution agreement, like an arbitration agreement, 'must be clear, explicit and unequivocal * * * and must not depend upon implication or subtlety' (Crimmins Contr. Co. v. City of New York, 74 N.Y.2d 166, 171, 544 N.Y.S.2d 580, 542 N.E.2d 1097 [1989]). Such an agreement may be incorporated by reference but that reference must "clearly show such an intent" (Matter of Aerotech World Trade v. Excalibur Sys., 236 A.D.2d 609, 611, 654 N.Y.S.2d 386 [2d Dep't], lv. denied, 90 N.Y.2d 812, 666 N.Y.S.2d 101, 688 N.E.2d 1383 [1997]). In the absence of a clear and express intent, a party may not be compelled to submit its claim to alternative dispute resolution (see, Matter of Marlene Indus. Corp. [Carnac Textiles], 45 N.Y.2d 327, 333-334, 408 N.Y.S.2d 410, 380 N.E.2d 239 [1978]).

In General Railway Signal Corp., supra, 254 A.D.2d 759, the defendant, Comstock, had a contract with the Metropolitan Transportation Authority, acting through the New York City Transit Authority (the "Authority") for the renovation of subway signal systems known as the "Jamaica Line Project." The prime contract provided "that all disputes arising under the contract, other than those to be decided by the Authority's Chief Engineer, must be submitted to the Authority's contractual Disputes review Board for resolution[.]" Id. at 759. The plaintiff, General Railway Signal Corp.:

. . . brought this action against Comstock, Seaboard Surety Co. and St. Paul Fire and Marine Insurance Company (defendants) seeking payment for labor and materials allegedly due under the subcontract. Supreme Court granted defendants' motion to stay the action pending arbitration and to change venue pursuant to CPLR 511. That was error.

254 A.D.2d at 759. Precisely as in the action at bar, in General Railway Signal Corp., as the Appellate Division found:

Nowhere in the subcontract is there a "clear, explicit and unequivocal" agreement to arbitrate. At best, the references in the subcontract regarding plaintiff's assumption of certain obligations that "flow-down" from the prime contract are equivocal and ambiguous regarding a similar assumption of the prime contract's alternative dispute provisions. Thus, the terms of the subcontract do not meet the rigid standards necessary to

> establish an explicit commitment by plaintiff to submit its claims against
> Comstock to alternative dispute resolution, as provided in the prime
> contract, and the court erred in staying the action pending arbitration.

Id. So too here, where the vague "flow down" provisions in both the Subcontract and the

Payment Bond emphatically do not "establish an explicit commitment by [IWCI] to submit its

claims against [Beys] to alternative dispute resolution" under the Article 29 procedures.

Even standing alone, the lack of any "clear, explicit and unequivocal" agreement by IWC

to use the Article 29 procedures, and IWC's foregoing argument based on General Railway

Signal Corp., supra, 254 A.D.2d 759, should flatten Federal's motion.

**B.     Under the Rule of *Contra Proferentum*, the Subcontract
Must Be Construed to Permit an Action Against Beys
Commenced Within the Limitations Period of
Subcontract Article 21.3**

Supposing *arguendo* that Subcontract Article 21.2[6] purports to incorporate by reference

the ADR provisions of Article 29 of Beys' contract with Hill, there is ambiguity as between the

Article 29 provisions, which provide for referral of all disputes successively to the

Commissioner, the Comptroller, and the Contract Dispute Resolution Board, with no resort to the

courts at all, excepting a possible review of the Contract Dispute Resolution Board under Article

78 of the N.Y. Civil Practice Law and Rules, and Subcontract Article 21.3, which contemplates

an "action or proceeding," while fixing abbreviated limitations periods (one year from final

payment, or six months from termination).

A construction contract, like any other, is subject to the rule of *contra proferentum,* that

ambiguous provisions will be construed against the party that drafted the agreement, in this case

Beys. *See* Oakgrove Const., Inc. v. Genessee Valley Nurseries, Inc., 10 Misc.3d 1053(A), 2005

---

[6] Which reads in part, "To the extent that any dispute arises hereunder and a suit is instituted thereby, it shall be brought in accordance with the terms and provisions contained in the Contract Documents."

WL 3240283 (Sup. Ct. Erie Co. 2005), appeal dismissed, 39 A.D.3d 1283, 832 N.Y.S.2d 860

(2007); Kapson Construction Corp. v. ARA Plumbing & Heating Corp., 227 A.D.2d 484, 642

N.Y.S.2d 701 (2d Dep't 1996). Language is ambiguous if it is:

> . . . capable of more than one meaning when viewed objectively by a
> reasonably intelligent person who has examined the context of the entire
> integrated agreement and who is cognizant of the customs, practices,
> usages and terminology as generally understood in the particular trade or
> business.

Hard Rock Café International (USA) Inc. v. Morton, 1999 WL 717995 at *20 (S.D.N.Y. 1999),

quoting Albany Sav. Bank, FSB v. Halpin, 117 F.3d 669, 673 (2d Cir. 1997). The alternative

construction urged by the non-drafting party must, of course, be "under all the circumstances, a

reasonable and practical one," United States v. Seckinger, 297 U.S. 203, 210, 90 S.Ct. 880

(1970), quoting Gelco Builders & Burjay Const. Co. v. United States, 369 F.2d 992, 999-1000,

177 Ct. Cl. 1025, 1035 (1966); Bazin v. Walsam 240 Owner, LLC, 18 Misc.3d 290, 2007 WL

3375821 (Sup. Ct. N.Y. Co. 2007). In Bazin, the Court observed:

> Whether or not a contractual provision contains an ambiguity is a
> question of law to be resolved by the courts. An ambiguity does not exist
> simply because the parties urge different interpretations of its terms, but is
> the result of the terms of an agreement being susceptible to more than one
> reasonable interpretation. Furthermore, any ambiguity found in a contract
> is always construed against the drafting party.

2007 WL 3375821 at *3 (citations omitted). Although extrinsic evidence may be received in aid

of construction, where extrinsic evidence "will not resolve the equivocality of the language of

the contract, the issue remains a question of law for the court," City of New York v. Evanston

Ins. Co., 39 A.D.3d 153, 156, 830 N.Y.S.2d 299 (2d Dep't 2007), quoting State of New York v.

Home Indem. Co., 66 N.Y.2d 669, 671, 495 N.Y.S.2d 969 (1985). Where all contract terms

cannot be harmonized, and "consideration of extrinsic evidence serves no worthwhile purpose,"

Oakgrove Constr., Inc., supra, 2005 WL 3240283 at *4-5, the court appropriately construes the

agreement against the drafter, *id., see also* <u>Highland Mechanical Inds., Inc. v. Herbert Construction Co., Inc.,</u> 216 A.D.2d 161, 628 N.Y.S.2d 655 (1st Dep't 1995).

At bar, reading the Article 29 ADR provisions into the Subcontract by reason of the general "flow-down" clause, Subcontract Article 21.2, creates an ambiguity, when the Article 29 provisions are read together with Subcontract Article 21.3, "Limitations on Actions." The latter provision purports to permit an "action," provided that the same be commenced within one year from final payment (or six months after termination of the contract). The Article 29 provisions do not create a mere condition precedent, such as mediation, before a plenary action may be commenced: these ADR proceedings do not permit a plenary action at all, only a review of the determination of the Contract Dispute Resolution Board, under an "arbitrary and capricious" standard, by the Supreme Court of New York, in a CPLR Article 78 proceeding. The limitations periods are, moreover, inconsistent, as Subcontract Article 21.3 purports to permit "actions or proceedings" to be brought within 1 year from final payment (or six months from termination) whereas, pursuant to CPLR 217, an action against a body or officer (*i.e.,* a CPLR Article 78 proceeding) must be commenced within four months after "the determination to be reviewed becomes final and binding upon the petitioner or the person whom he represents in law or in fact."

As it is not possible to harmonize all of the foregoing inconsistent provisions, either the court must adopt a reading of the Subcontract that subjects the Subcontractor, IWC, to the constricted remedy under the Article 29 provisions, which reading is more favorable to Beys and to its surety, or it must read Subcontract Article 21.2 (which does not expressly refer to alternative dispute resolution, the PPB Rules, Article 29, or the like) as not limiting IWC's remedies to Article 29. As Federal's principal, Beys, drafted the Subcontract, the ambiguity

must be construed against it. This should be all the more apparent after reading the following sub-part (C), which IWC submits negates any question but that a reading of the Subcontract to subject all disputes to Article 29 would be unreasonable and, indeed, oppressive.

**C.    A Reading of the Subcontract to Incorporate Article 29 Should Be Rejected, Under the Rule That Disfavors Construing Contract Provisions To Place One Party at the Mercy of the Other.**

As mentioned, determining whether a contract is "ambiguous" is for the Court, taking into account the context of the entire agreement, against the backdrop of the customs, practices, usages and terminology as generally understood in the particular trade or business. In construction contracting, although the parties' omission to make other provisions therefor in their contract would in effect provide for disputes to be resolved in court without a condition precedent such as mediation, the "custom and practice" of the industry, it may be assumed, is that as projects of any size (and most smaller ones) almost inevitably produce disputes, either the parties will enter into their contract having given thought to the various modalities of contract resolution (litigation, arbitration, other ADR etc.) or else the "downstream" contractor, generally occupying the weaker bargaining position, will have acceded to the dispute resolution provisions inserted in the contract by the owner or general contractor. That disputes are sufficiently prevalent as to be the norm rather than the exception, however, is part of the backdrop against which all construction contracts are negotiated and entered into.

Other, well-known realities of New York construction contracting must also be taken into account. One is that, ordinarily, a sub-subcontractor cannot sue the owner or any other party with which it is not in contractual privity, *see* Bubonia Holding Corp. v. Jeckel, 189 A.D.2d 957, 592 N.Y.S.2d 499 (3d Dep't 1993), and a prime contractor will not be responsible, vis-à-vis a subcontractor, for matters not caused by some agency or circumstance under the prime

contractor's direction or control, <u>Triangle Sheet Metal Works, Inc. v. James H. Merritt and Co.</u>, 79 N.Y.2d 801, 580 N.Y.S.2d 171 (1991).

N.Y. CPLR Article 78 is entitled, "Proceeding Against Body or Officer," and, in the context of a proceeding to review a determination by the Contract Dispute Resolution Board, is the statutory successor to the write of certiorari to review. Were the Board to render a determination of a dispute under a contract between DDC and a contractor, the only questions in the Article 78 proceeding would be:

> 3. whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion, including abuse of discretion as to the measure or mode of penalty or discipline imposed[.]

CPLR 7803(3). As the name implies, the "Article 78 proceeding" will lie only against a public body or officer. Thus, as Beys is a private entity, and not a "body or officer" within the meaning of the statute, assuming the applicability of Article 29's ADR provisions in the Subcontract between IWC and Beys, the remedy of an Article 78 proceeding is wholly nugatory as to the subset of potential disputes involving IWC and Beys (but not DDC) as IWC would not be able to maintain an Article 78 proceeding against Beys. <u>See</u> <u>Surdell v. City of Oswego</u>, 91 Misc.2d 1041, 399 N.Y.S.2d 173 (Sup. Ct. Oswego Co. 1977); <u>Mangano v. Altmeyer</u>, 32 Misc.2d 841, 225 N.Y.S.2d 379 (Sup. Ct. N.Y. Co. 1962).

The most common means to bridge the "privity gap" to permit the assertion of claims on the part of a subcontractor as against an owner, of course, is the so-called "liquidating agreement," whereby the "upstream" party (for example, the general contractor) admits and acknowledges liability to its contracting partner immediately "downstream" (*e.g.,* a subcontractor) and the latter's claim is liquidated in such amount as the general contractor may recover in an action or other proceeding against (in our example) the owner. <u>See</u> <u>North Moore</u>

13

Street Developers, LLC. V. Meltzer/Mandl Architects, P.C., 23 A.D.3d 27, 799 N.Y.S.2d 485 (1st Dep't 2005); Bovis Lend Lease LMB Inc. v. GCT Venture, Inc., 285 A.D.2d 68, 728 N.Y.S.2d 25 (1st Dep't 2001); Barry, Bette & Led Duke Inc. v. State of New York, 240 A.D.2d 54, 669 N.Y.S.2d 741 (3d Dep't), motion for leave to appeal denied, 92 N.Y.2d 804, 667 N.Y.S.2d 779 (1998); Postner & Rubin, New York Construction Law Manual, § 3:23.

However, as the Appellate Division noted in Barry, Bette & Led Duke Inc. v. State of New York, *supra,* 240 A.D.2d at 57, "liquidating agreements do not come into existence through inference." While liquidating agreements may be memorialized in the subcontract, or a separate written agreement (or even assembled from several documents executed over time), *id.* at 56, they will not be presumed. And, where there is no liquidating agreement, in addition to the bar of the lack of privity, which prevents the subcontractor (here, IWC) from suing the owner (here, DDC) neither will the general contractor (here, Beys) be authorized to bring a "pass-through" action in IWC's behalf. *See* I.T.R.I. Masonry Corp. v. State of New York, 21 A.D.3d 990, 991, 801 N.Y.S.2d 396 (2d Dep't 2005).

Thus, to accept the contract interpretation advanced by Beys, bar any action by IWC against Beys (or Federal, Beys' surety) and confine available remedies to those provided under the PPB Rules and Article 29 is effectively to give IWC no dispute resolution remedies as against Beys (as there is no basis to bring City employees such as the Commissioner, the Comptroller, et al. into a dispute as between two private construction entities, nor will an Article 78 proceeding lie as against Beys).

And, even where (as here) IWC's primary grievance is against the DDC (both Beys and Hill having recommended approval of IWC's change order):

- IWC is barred from suing DDC directly;

- IWC finds no liquidating agreement in its Subcontract with Beys;

- In the absence of a <u>requirement</u> that Beys (and, presumably, Hill *in addition to* Beys) admit liability (*i.e.,* enter into a liquidating agreement) and champion IWC's claims against DDC, Article 29 remedies are effectively unavailable, and of no use to IWC.

Thus, where a party in the position of IWC has grievances or claims that lie in whole or in part against the public owner, limiting its dispute resolution options to those under Article 29 requires an act of grace first, on the part of Beys, and second, on the part of Hill. This is because <u>two</u> liquidating agreements are necessary, there being two "gaps" in the chain of privity that must be "bridged," if the third-tier contractor, IWC, is to have a meaningful remedy, under the PPB Rules, vis-à-vis the owner. Leaving aside the impracticability of requiring reliance on a gratuitous act on the part of Hill (a stranger to IWC's contract with Beys) even as to Beys, a construction of the Subcontract that excludes all but Article 29 remedies runs afoul of the rule that contract provisions that place either party at the mercy of the other are to be disfavored, *see generally* Jacobsen v. Weiss, 260 A.D.2d 308, 689 N.Y.S.2d 75 (1st Dep't 1999); <u>Comras v. Comras,</u> 195 A.D.2d 358, 600 N.Y.S.2d 61 (1st Dep't 1993); <u>Components Direct, Inc. v. European American Bank and Trust Co.,</u> 175 A.D.2d 227, 230, 572 N.Y.S.2d 359 (2d Dep't 1991).

Also, as a construction imposing the Article 29 procedures as the Subcontract's sole means to redress disputes gives <u>no</u> redress solely as against Beys (as the PPB Rules procedures and an Article 78 proceeding are not available as between two private contractors) and redress against the City that depends for its viability on both Beys and Hill voluntarily entering into liquidating agreements and advancing IWC's claims, IWC proposes that such a construction is "unreasonable" as a matter of law, and should be rejected.

## CONCLUSION

Based on the foregoing, Federal's motion to dismiss should be in all respects denied.

Dated:        White Plains, New York
              February 22, 2008

                                        WELBY, BRADY & GREENBLATT, LLP
                                        *Attorneys for Plaintiff, Industrial Windows
                                        Corporation*


                                        _____
                                        Anthony P. Carlucci, Jr. [AC7565]
                                        11 Martine Avenue, 15th Floor
                                        White Plains, New York 10606
                                        Tel. (914) 428-2100
                                        Fax (914) 428-2172

Of Counsel
  Geoffrey S. Pope

16