UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
INDUSTRIAL WINDOW CORP,

                Plaintiff,

    -against-

FEDERAL INSURANCE COMPANY,

                Defendant.
-------------------------------------------------------------------X

Civ. No.:  07 CV 10959
(Rakoff, J.)

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S
RULE 12(b)6 MOTION TO DISMISS**

                MILBER, MAKRIS, PLOUSADIS
                  & SEIDEN, LLP
                1000 Woodbury Road, Suite 402
                Woodbury, New York 11797
                (516) 712-4000
                Attorneys for Defendant
                Federal Insurance Company

## INTRODUCTION

Defendant Federal Insurance Company ("Federal") submits this Reply Memorandum of Law in further support of its motion for an Order pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure dismissing the complaint of plaintiff, Industrial Window Corp. ("IWC") as against Federal upon the ground that the instant action is barred by the resolution of disputes provisions incorporated in the subcontract between IWC and the principal on the payment bond, Beys General Construction Corp. ("Beys").

## POINT I

## LEGAL ARGUMENT

### THE SUBCONTRACT REQUIRES IWC TO PURSUE CHANGE ORDER CLAIMS THROUGH THE DISPUTE RESOLUTION PROCESS SET FORTH IN THE PRIME CONTRACT

Article 1.1.1.c. of the subcontract between IWC and Beys lists the prime contract between the New York City Department of Design and Construction ("DDC") and Hill International, Inc. ("Hill") as a "Contract Document". Article 2.2 of the subcontract provides that it is deemed to include <u>all</u> of the Contract Documents, which would of necessity include the prime contract. In its Brief in Opposition to the motion to dismiss, IWC erroneously states:

> While Federal's motion papers state that "[t]he form contract included in the bid package was essentially the contract between Hill and DDC with minor changes," Federal's Brief at 3, we do not actually find, in Federal's motion papers, a copy of the DDC-Hill contract. While it is entirely possible that the latter contains provisions identical to the dispute resolution provisions of Article 29 contained in the next-tier contract between Hill and Beys, the "Prime Contract", supposedly incorporated by reference in the Subcontract does not appear to be annexed as part of Federal's motion.

(IWC Brief in Opposition, p. 3).

1

Quite to the contrary, Exhibit A to the Moving Affidavit of George Kougentakis contains Beys' entire contract with Hill including the 65 page <u>signed</u> contract entered into between DDC and Hill. The first page of that contract, which is labeled at the bottom as "Construction Management/Build Services Requirements Contract", sets forth the following:

> This AGREEMENT, made and entered into this <u>11</u> day of <u>February, 2004</u>, by and between the City of New York (the "City") acting by and through the Commissioner of the Department of Design and Construction (the "Commissioner") and Hill International, Inc. (the "Contractor"), located at One Penn Plaza, Suite 3415, New York, New York 10119.

After reciting 64 pages of terms and conditions, including the dispute resolution provisions set forth in Article 29, the prime contract is signed on page 64 by representatives of the City and Hill. The signatures are notarized on page 65. IWC's inability to recognize the prime contract may certainly have contributed to its failure to understand that alternate dispute resolution procedures were set forth therein.

It is well established that the State of New York favors and encourages alternate dispute resolution as the means of conserving the time and resources of the Courts and the contracting parties. <u>Nationwide Gen. Ins. Co. v. Investors Ins. Co. of America</u>, 37 N.Y.2d 91, 371 N.Y.S.2d 463, 332 N.E.2d 333 (1975); <u>Cooper v. Bluthner</u>, 21 A.D.3d 758, 801 N.Y.S.2d 19 (1st Dept. 2005). Any doubts as to whether an issue is subject to an alternative dispute resolution procedure will be resolved in favor of that process. <u>State v. Philip Morris, Inc.</u>, 30 A.D.3d 26, 813 N.Y.S.2d 71 (1st Dept. 2006); <u>Fairfield Towers Condominium Assn. v. Fishman</u>, 1 A.D.3d 252, 769 N.Y.S.2d 214 (1st Dept. 2003).

As the basis for its opposition to Federal's motion, IWC contends that the language of the subcontract is not sufficiently clear to impose a requirement that IWC pursue the disputed

change order through the contractually specified dispute resolution process. Reliance for that position is predicated on General Railway Signal Corp. v. L.K. Comstock and Co., Inc., 254 A.D.2d 759, 678 N.Y.S.2d 208 (4th Dept. 1998), leave dismissed, 93 N.Y.2d 881, 689 N.Y.S.2d 424 (1999). General Railway stands for little more though than the proposition that an alternate dispute resolution provision in a prime contract must be clearly included in the subcontract in order to be binding upon that subcontractor.

In General Railway, the Court held that a "flow down" provision was not sufficiently clear to require the subcontractor to participate in the ADR process. The case does not cite the language upon which the Court reached its conclusion other than to reference the fact that it was a "flow down" provision. In the present case, however, the prime contract is not a "flow down" because it is specifically listed as a "Contract Document" under Section 1.1 of the subcontract. Section 2.2 of the subcontract states that "Contract Documents form the contract between Contractor and Subcontractor". As a "Contract Document", the dispute resolution provisions are as binding as any other term in the prime contract. In addition, Section 21.2 of the subcontract states that disputes must be brought in accordance with the procedures set forth in the Contract Documents, which of course include the prime contract.

When interpreting a written contract, the purpose of the Court is to determine the intention of the parties as derived from the language employed in the contract. Morlee Sales Corp. v. Manufacturers Trust Co., 9 N.Y.2d 16, 210 N.Y.S.2d 516, 172 N.E.2d 280 (1961). Where the parties have agreed to conduct themselves in accordance with the rights and duties expressed in a contract, a Court should strive to give a fair and reasonable meaning to the language used. Abiele Contracting, Inc. v. New York City School Const. Authority, 91 N.Y.2d 1, 666 N.Y.S.2d 970, 689 N.E.2d 864 (1997). The contract provisions discussed above when

3

taken together make it crystal clear that Beys expected all of its subcontractors, including IWC, to participate in the alternate resolution process where disputed DDC change orders were involved.

## POINT II

## THERE IS NO AMBIGUITY BETWEEN ARTICLE 21.2 OF THE SUBCONTRACT AND ARTICLE 29 OF THE PRIME CONTRACT

In furtherance of its contention that the language requiring IWC to participate in the dispute resolution process for change orders is not sufficiently clear, IWC contends that the abbreviated period for commencing an action or proceeding under Article 21.3 of the subcontract is inconsistent with Article 29.1 of the prime contract. Article 29.1 of the prime contract provides in relevant part:

> 29.1 <u>All disputes between the City and the Contractor of the kind delineated in this article that arise under</u>, or by virtue of, this Contract shall be finally resolved in accordance with the provisions of this article and the PPB Rules. <u>The procedure for resolving all disputes of the kind delineated herein</u> shall be the exclusive means of resolving any such disputes.
>
> . . .
>
> 29.1.2 This article shall apply <u>only</u> to disputes about the scope of work delineated by the Contract, the interpretation of Contract documents, the amounts to be paid for Extra Work or disputed work performed in connection with the Contract, the conformity of the Contactor's Work to the Contract, and the acceptability and quality of the Contractor's Work; such disputes arise when the Engineer (defined in the contract)[1] makes a determination with which the Contractor disagrees (emphasis supplied).

This language demonstrates that there are entire categories of claims which would not be subject to the dispute resolution procedure. For example, claims for damages suffered as a result

---

[1] The prime contract defines "Engineer" as the Commissioner's Representative. Prime Contract, p.2.

4

of project delays are not included under the above cited language. Such claims would need to be pursued through a traditional lawsuit. In addition, the clause does not cover any disputes involving issues strictly between Beys and IWC. For example, if Beys received payment for IWC's work but failed to remit that payment, there would be no need for an engineer's decision and therefore, Article 29 would never be triggered. As there are a multitude of situations under which a traditional lawsuit could be filed by IWC against Federal or Beys, Article 21.3 of the subcontract merely seeks to impose a more limited statute of limitations for the assertion of such claims. Thus, there is clearly no inconsistency in the subcontract by virtue of these two provisions.

It has not been suggested by this motion that there are no circumstances under which IWC would have the right to commence a lawsuit against Federal or Beys. The present action, however, arises out of a dispute over a change order which was denied by DDC. Specifically, the City refused to permit IWC to perform the work of its subcontract as it originally anticipated. Beys had no input on whether to permit IWC to perform the work as it claims it originally anticipated. IWC has readily conceded that the dispute is the result of conduct on the part of DDC. (See Vicario Affidavit, IWC Brief, p. 14). Such a dispute is squarely covered by the dispute resolution procedure set forth in Article 29 of the prime contract.

## POINT III

### THE ABSENCE OF CONTRACTUAL PRIVITY HAS IN NO WAY LIMITED IWC'S ABILITY TO PURSUE THE SUBJECT CLAIM

IWC contends that the subcontract should not be enforced with regard to the dispute resolution provisions because it is allegedly at the mercy of Beys and Hill to provide a liquidating agreement should it decide to pursue an Article 78 proceeding after exhaustion of all other possible dispute resolution avenues spelled out under the subcontract.

The problem with this argument is that it ignores the need for other steps in the dispute process to be pursued through Beys and Hill, ignores the events which have taken place to date and ignores the incentive for both Beys and Hill to ultimately enter into liquidating agreements if necessary.

The need for cooperation and participation is not limited to Article 78 proceedings. IWC has no right to submit its change order request directly to the Commissioner of DDC, the Comptroller of the City of New York or the Policy Procurement Board; each of these phases admittedly requires the participation of both Beys and Hill. As noted in the Reply Affidavit of George Kougentakis, both Beys and Hill have sought in writing to have IWC pursue its change order through the contractually mandated dispute resolution procedure. IWC has, however, twice rejected those efforts.

The fact is that having included an alternate dispute resolution provision in the subcontract, Beys has an implied obligation to facilitate the pursuit of the claim through the dispute resolution procedure as all contracts contain an implied covenant of good faith and fair dealing. Arbitron Inc. v. Tralyn Broadcasting, Inc., 526 F.Supp.2d 441 (S.D.N.Y. 2007). The covenant of good faith and fair dealing implied in every contract under New York law precludes

6

a party from engaging in conduct that will deprive the other party of the benefits of their agreement. CSI Investment Partners II, LP v. Cendant Corp., 507 F.Supp.2d 384 (S.D.N.Y. 2007). Therefore, if Beys refused to cooperate in permitting IWC to access contractually mandated dispute resolution procedures, it would run the risk of breaching the subcontract. Given the level of cooperation shown by Beys and Hill to date as reflected in the Kougentakis Reply Affidavit, there is no reason to believe that Beys or Hill would potentially violate the implied duty of good faith by refusing to enter into a liquidating agreement to facilitate pursuit of an Article 78 proceeding by IWC.

The issue raised by IWC is really a red herring though because further pursuit of the change order is no longer possible as a result of IWC's November 19, 2007 and January 25, 2008 letters which indicated that it did not intend to participate in the dispute resolution procedures set forth in the subcontract.[2] IWC has refused to participate in that process presumably out of concern that its actions would be taken as an admission in the present case. Having made that conscious decision, however, it cannot use speculation about the future conduct of Beys and Hill to justify its wrongful refusal to participate in alternate dispute resolution. Such speculation is made particularly egregious by the fact that the Article 78 remedy is no longer even an option.

---

[2] Hill submitted the change order request to the Commissioner of DDC despite IWC's express refusal to participate. Following denial by the Commissioner, Hill did not submit the claim to the Comptroller in light of IWC's second refusal to participate.

7

## CONCLUSION

For the foregoing reasons, defendant Federal Insurance Company respectfully requests that this Court dismiss the complaint of plaintiff, Industrial Window Corp., with prejudice together with such other and further relief as this Court deems just, proper and equitable.

Respectfully Submitted,

MILBER, MAKRIS, PLOUSADIS
& SEIDEN, LLP

By: Joseph J. Cooke, Esq. (JC 6888)
Attorneys for Defendant
Federal Insurance Company
1000 Woodbury Road, Suite 402
Woodbury, New York 11797
(516) 712-4000
File No.: C0407-0002