UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
INDUSTRIAL WINDOW CORP.,

                                            Plaintiff,

                    -against-

FEDERAL INSURANCE COMPANY,

                                            Defendant.
-----------------------------------------------------------X

Case No.:  07 CV 10959
(Rakoff, J.)


**REPLY AFFIDAVIT OF**
**GEORGE KOUGENTAKIS**

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF KINGS      )

George Kougentakis, being duly sworn, deposes and says the following:

1.      I am the President of Beys General Construction Corp. ("Beys").  I submit this reply affidavit in further support of the motion of defendant Federal Insurance Company ("Federal") for an Order pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure dismissing the Complaint of the plaintiff as against Federal upon the ground that the instant action is barred by the resolution of disputes provisions included in the subcontract between IWC and Beys.

2.      The affidavit of Michael Vicario, President of Industrial Window Corp. ("IWC"), appears to be largely duplicative of the arguments contained in IWC's Brief in Opposition.  With regard to the legal arguments contained in Mr. Vicario's affidavit, our attorney has responded to them in the accompanying Reply Memorandum of Law.

3.      With regard to the facts of the case, Mr. Vicario readily acknowledges the accuracy of the events set forth in my moving affidavit which have led to the current dispute.  Despite that acknowledgment, Mr. Vicario contends, among other things, that IWC would have no way to pursue the contested change order through the dispute

resolution process because it has no privity with Hill or DDC. This claim is simply untrue.

4.    When IWC learned that its original method of offloading the stainless steel mullions and installing the glass panels would not be permitted by the Metropolitan Transit Authority ("MTA"), IWC participated in meetings with Amber France of Hill seeking to obtain additional payment for the alleged change in their method of work. It was ultimately agreed by Hill that it would submit change order proposal G055 to DDC for approval in the amount of $110,978.00. This change order request was submitted with the participation and agreement of IWC in a manner consistent with the prime contract between Hill and DDC. (Documentation reflecting IWC's submission is annexed hereto as Exhibit "A").[1] Thus, despite an absence of privity between IWC and Hill/DDC, IWC change order request G055 was submitted by DDC by letter dated August 13, 2007. (A copy of that letter is annexed hereto as Exhibit "B"). The information set forth in that letter came directly from IWC. Had IWC believed that it was not bound by the provisions of the prime contract, it would have looked no further than Beys for approval of the change order.

5.    By letter dated October 9, 2007, DDC declined the claim (see Exhibit D to my moving affidavit). Hill advised us by letter dated November 15, 2007 that if IWC wished to pursue the claim further, they would submit it to the Commissioner's office for review. Beys in turn asked IWC if they wished to pursue the claim by letter dated November 15, 2007. (Copies of those letters are annexed hereto as Exhibit "C"). Consequently, there was no impediment to IWC pursing the claim through the dispute

---

[1] Parenthetically, Beys had no involvement in determining the merits of the change order and simply served as a conduit to send information to Hill.

resolution process set forth in the prime contract.    The absence of a "liquidating agreement" in no way prohibited IWC from pursuing the claim.  In fact, Beys would have potentially violated the implied duty of good faith under the subcontract had it not allowed IWC to pursue the claim through the contractually specified dispute resolution process.

6.    Although IWC indicated in a November 19, 2007 letter that it did not want to participate in the dispute resolution process, Hill nonetheless submitted the change order request to the Commissioner of DDC for consideration.  By letter dated December 31, 2007, the change order request was denied by the Commissioner's office. (Copies of those two letters are annexed hereto as Exhibit "D").  Following that denial, Hill again offered to submit the claim to the Comptroller's office and we in turn offered the same to IWC. (Correspondence reflecting those offers is annexed hereto as Exhibit "E").

7.    IWC rejected that offer by letter dated January 29, 2008. (A copy of that letter is annexed hereto as Exhibit "F").  Despite that refusal, the fact remains that the absence of privity had no impact whatsoever on IWC's ability to pursue the claim through the contractually specified dispute resolution process.  Had IWC chosen to ultimately pursue the matter through an Article 78 proceeding, Beys would have had no objection to executing legal documents necessary to allow them to do so.  In fact, in this regard, Beys is no different than IWC because it is technically not in privity with DDC either.

8.    Beys continues to believe that the inclusion of the prime contract as a "Contract Document" obligates IWC to participate in the alternate dispute resolution process where it involves a change order resulting from an act or omission on the part of

DDC. The curtain wall logistics change order clearly falls under that category and IWC has conceded in its Brief that their grievance is the result of conduct on the part of DDC. (IWC Brief, p. 14). Absent a requirement that IWC pursue approval of its change order in accordance with the prime contract, Beys is exposed to the possibility of inconsistent verdicts on a claim for additional work in which it had no involvement. It is clear that IWC is attempting to simply end run the terms of the subcontract because of its concern that the dispute resolution process will not result in a favorable outcome. Having entered into a subcontract which has multiple provisions requiring its participation in a dispute resolution process, IWC should not be permitted to pursue an alternate legal remedy which it unilaterally deems potentially more favorable.

George Kougentakis

Sworn to before me this
29th day of _February_, 2008

Notary Public

IOANNA KATSIMBRAKIS
Notary Public, State of New York
No. 01KA5069243
Qualified in Richmond County
Commission Expires Nov. 25, 2010



# *Industrial Window Corp.*

515 North State Road * Briarcliff Manor, New York 10510
(914) 923-1800 * Fax: (914) 923-6028

## Fax Transmission Cover Page

| | |
|---|---|
| **To:** | PAUL RIVERA |
| **Comp:** | BEYES CONTRACTING |
| **From:** | DAVE MENSI ( EXT 115) |
| **Date:** | 2/14/2007 |
| **Subj:** | SCHOMBERG CENTER |
| **Fax:** | 718-336-5960 |

**Number of Pages including cover:**                         **6**

PAUL

AS DISCUSSED, I HAVE REVIEWED AND REVISED MY CHANGE ORDER
REQUEST FOR THE MTA ISSUES (CO #3). I HAVE TAKEN INTO
ACCOUNT AMBERS COMMENTS ON THE DURATIONS, AND HAVE
REFIGURED, BASED ON A GOOD FAITH EFFORT, OUR DURATIONS
FOR MANPOWER AND EQUIPMENT. I CONCUR WITH AMBER AS FAR
AS THE EQUIPMENT DURATION. I HAVE ADJUSTED MY MANPOWER
TO WHAT I FEEL IS A REASONABLE EFFORT IN MEETING HER
ASSESMENT.

*- Need this justified*

AS FAR AS THE MTA & NYC PERMIT FEES ARE CONCERNED, I HAVE
LEFT THEM IN AT THIS POINT. IF AMBER CAN SHOW US PROOF AND
DOCUMENTATION FROM BOTH THE MTA AND NEW YORK CITY THAT
THE FEES HAVE INDEED BEEN WAIVED, THEN I WILL DEDUCT SAID
FEES FROM MY PROPOSAL ACCORDINGLY.

PLEASE REVIEW AND SUBMIT ACCORDINGLY.

THANKS

DAVE

# BEYS GENERAL CONSTRUCTION CORP
## 2520 Coney Island Avenue
### Brooklyn, NY 11223

(718) 627-7780

FAX (718) 336-5960

February 19, 2007

Miss Amber France
Project Manager
Hill International, Inc.
1 Penn Plaza
New York, NY 10119

Re:   **Schomburg Center Library**
      **Renovation Project # LM001SCHO**
      **Change Order No. 36 (Revision 3)**
      **MTA Approved Protocols-**
      **Curtain Wall Delivery and Installation**

Dear Miss France:

Reference is made to your fax dated 1/31/07 concerning the above. Industrial Window
Corp. has revised their proposal to incorporate most of your latest changes. You will
note that the MTA and NYC Permit fees are still included in proposal. These fees were
paid by Bay Crane. Industrial's cover letter states their position regarding these fees.
Attached is updated cost tabulation for the various components of this change order. This
attached breakdown is summarized as follows:

| ITEM | COST | |
|------|------|---|
| 1. Credit for base bid protocol for unloading SS Curtain wall components and glass | (12,608) | *See Part 1* |
| 2. Credit for base bid protocol for installation of SS Curtain wall Components, glazing and caulking | (86,031) | *See Park 2* |
| 3. Extra cost for MTA approved protocol for unloading SS curtain wall components and glass | ~~62,796~~ | *From Part 4 mark-ups SEE 296.8* |
| 4. Extra cost for MTA approved protocol for installation of curtain wall system, glazing and caulking. | ~~145,144~~ | *From PART 5 mark-ups 122 710.96* |
| 5. Insurances (no change) | 4,981 | |
| | ~~114,282~~ 87349.76 | |
| Sub Contractor OH & Profit (21%) | ~~23,989~~ 18343.45 | |
| | 138,281 | 105 693.2 |
| GC OH & Profit (5%) | ~~6,914~~ | 5284.66 |
| | 145,195 | 110 977.9 |

Please contact me if you have any questions concerning the above.

Sincerely,

*Paul D. Rivera*

**Paul D. Rivera**
**Project Executive**



**CHANGE ORDER**
*INDUSTRIAL WINDOW CORP.*
515 NORTH STATE ROAD
BRIARCLIFF MANOR, NEW YORK 10510
(914) 923-1800 (914) 923-6028 FAX

| Change Order #: |
|---|
| 3 |

5/3/2006

TO:   BEYES GENERAL CONSTRUCTION            DATE:                    REVISED 2/13/67
2528 CONEY ISLAND AVE
BROOKLYN NY 11223
ATT: PAUL RIVERA                 PHONE / FAX        718-447-7796 / 336-4940

JOB #                           2S-231

JOB NAME & LOCATION  SCHOMBURG CENTER
NEW YORK NY

TO RECEIVE DELIVERY AND INSTALL CURTAINWALL SYSTEM IN ACCORDANCE WITH MTA DIRECTIVE

ALL BACKUP FOR THE FOLLOWING VALUES IS ATTACHED TO THIS CHANGE ORDER

NOTE: THIS CHANGE ORDER ENCOMPASSES AND VOIDS OUT CHANGE ORDER #3A AND #4 PREVIOUSLY SUBMITTED

| | |
|---|---:|
| CREDIT DUE OWNER FOR BASE BID UNLOADING PROCEDURES | ($12,606.80) |
| CREDIT DUE OWNER FOR BASE BID INSTALLATION PROCEDURES | ($95,031.12) |
| COST TO UNLOAD MATERIALS IN ACCORDANCE WITH MTA PROTOCOL | $21,796.82 |
| INCLUSIVE OF 3 MOBILIZATIONS AS DESCRIBED IN THE ATTACHED | $115,144.00 |
| COST TO INSTALL CURTAINWALL SYSTEM IN ACCORDANCE WITH MTA PROTOCOL | $4,981.19 |
| INSURANCES | $23,599.24 |
| 21 % O/ H AND PROFIT | |
| **NET ADD** | **$138,281.33** |

THE CONTRACT DURATION HAS BEEN CHANGED BY ( 150 ) DAYS

NOTE: This revision becomes part of, and in conformance with the existing contract.

SIGNATURE: _____

DATE: _____

Accepted: The above prices and specifications of this Change Order are satisfactory and are hereby accepted. All work
to be performed under same terms and conditions as specified in original contract unless otherwise stipulated.

DATE: _____

Signature: _____

Print Name & Title: _____

## PART 1
BASE BID PROTOCOL FOR UNLOADING S/S CURTAINWALL COMPONENTS AND GLASS

IWC HAD PLANNED ON RECEIVING CURTAINWALL ON FLATBED TRUCKS DURING REGULAR WORK HOURS -
UNLOADING SYSTEM WITH LULL AND ON SITE MANPOWER - STORING SYSTEM ON SITE
GLASS WOULD BE RECEIVED DURING REGULAR WORK HOURS VIA FLATBED AND UNLOADED BY GLASS MFR
- STORED ON SITE
CURTAINWALL 1 DAY - GLASS 1 DAY - DEPP GLASS 1 DAY - CANOPY 1 DAY --- TOTAL OF 4 DAYS

| | | | | |
|---|---|---|---|---|
| CURTAINWALL DELIVERY | | | $ | 600.00 |
| CANOPY DELIVERY | | | $ | 600.00 |
| | | | | |
| LULL | 4 DAYS | 125 / DAY | $ | 500.00 |
| | 4 DAYS | 600 / DAY | $ | 2,400.00 |
| SUPER | 1 MAN | | | |
| FOREMAN | 1 MAN | | | |
| IRONWORKERS | 4 MEN | 64 HRS | 71.65 / HR | $ 4,585.60 |
| GLAZIERS | 4 MEN | 64 HRS | 61.30 / HR | $ 3,923.20 |

TOTAL COST    $ **12,608.80**
BEFORE OVERHEAD & PROFIT

## PART 2
### BASE BID PROTOCOL FOR INSTALLATION OF STAINLESS STEEL CURTAINWALL COMPONENTS, GLAZING AND CAULKING

UNCRATE SYSTEM ON SIDEWALK - ERECTING SYSTEM WITH LARGE SCISSOR LIFT, ONE BOOM LIFT AND MANPOWER
UNCRATE GLASS AS REQUIRED AND THEN INSTALL THE CAULK

| | | | | | |
|---|---|---|---|---|---|
| LARGE SCISSOR LIFT | | 6 WEEKS | 412 / WEEK | $ | 2,472.00 |
| REG SCISSOR LIFT | | 6 WEEKS | 265 / WEEK | $ | 1,590.00 |
| SUPER | 1 MAN | 20 DAYS | 125 / DAY | $ | 2,500.00 |
| FOREMAN | 1 MAN | 36 DAYS | 600 / DAY | $ | 21,600.00 |
| LABORER | 1 MAN | 36 DAYS | 54.99 / HR | $ | 15,837.12 |
| GLAZIER | 2 MEN | 40 DAYS | 61.30 / HR | $ | 39,232.00 |

288 HRS
640 HRS

* DOES NOT INCLUDE DELIVERY DAYS FROM PART 1

| | | | | | |
|---|---|---|---|---|---|
| DRIVER | 1 MAN | 16 DAYS | 50 / DAY | $ | 800.00 |
| TRUCK | | 16 DAYS | 125 / DAY | $ | 2,000.00 |

TOTAL COST
BEFORE OVERHEAD & DELIVERY    $ ~~86,081.12~~ 86,031.12

## PART 3
### BASE BID TIMELINE FOR DELIVERY & INSTALLATION OF CURTAINWALL, GLAZING, AND CAULKING

| | WEEK 1 | WEEK 2 | WEEK 3 | WEEK 4 | WEEK 5 | WEEK 6 | WEEK 7 | WEEK 8 |
|---|---|---|---|---|---|---|---|---|
| CURTAINWALL INSTALLATION | XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX | | | | | | | |
| GLAZING | | | XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX | | | | | |
| CAULKING | | | | | | | | |
| FINISH UP WORK | | | | | | | | |

PART 4
MTA APPROVED PROTOCOL FOR UNLOADING OF S/S CURTAINWALL COMPONENTS AND GLASS

ALL OF THE WORK DESCRIBED BELOW IS TO BE PERFORMED DURING REGULAR WORKING HOURS

RECEIVE CURTAINWALL & CANOPY MATERIALS ON A FLATBED TRUCK - UNLOAD CURTAINWALL AND CANOPY MATERIALS ON
MALCOLM X BLVD USING A 35 TON CRANE WITH REQUIRED MANPOWER - SPREAD OUT MATERIALS ON SITE
RECEIVE CURTAINWALL GLASS MATERIAL ON A FLATBED TRUCK - UNLOAD CURTAINWALL GLASS MATERIAL ON MALCOLM X BLVD
USING A 35 TON CRANE  WITH REQUIRED MANPOWER - SPREAD OUT MATERIALS ON SITE
RECEIVE DEPP GLASS MATERIAL ON A FLATBED TRUCK - UNLOAD DEPP'S MATERIAL ON MALCOLM X BLVD USING
A 35 TON CRANE  WITH REQUIRED MANPOWER - SPREAD OUT MATERIALS ON SITE

| | | | | |
|---|---|---|---|---|
| CRANE / OPERATOR | 7/7/2006 | 6,654.16 / DAY | $ | 6,654.16 |
| | 7/21/2006 | 4,557.14 / DAY | $ | 4,557.14 |
| | 8/21/2006 | 6,395 / DAY | $ | 6,395.00 |
| | 3 DAYS | 475 / DAY | $ | 1,900.00 |
| TRUCKER | | FLAT FEE | $ | 10,000.00 |
| NYC PERMITS | | FLAT FEE | $ | 7,200.00 |
| MTA PERMITS | 18 CRATES | 400 / CRATE | | |
| CRATING CHARGES | | | | |

* ADDITIONAL CRATES & CRATING CHARGES ARE REQUIRED FOR THE CURTAINWALL GLASS IN ORDER
  FOR THE GLAZIERS TO BETTER HANDLE THE CRATES AND SPREAD THEM AROUND THE SITE

| | | | | | |
|---|---|---|---|---|---|
| SUPER | 1 MAN | 3 DAYS | 125 / DAY | $ | 375.00 |
| FOREMAN | 1 MAN | 3 DAYS | 600 / DAY | $ | 1,800.00 |
| IRONWORKERS | 4 MEN | 1 DAY | 71.657 / HR | $ | 2,292.80 |
| GLAZIERS | 4 MEN | 2 DAYS | 61.30 / HR | $ | 3,923.20 |
| LABORERS / FLAGMEN | 2 MEN | 3 DAYS | 54.99 / HR | $ | 2,639.52 |
| STORAGE FEE 5/3/06 - 7/7/06 | | 66 DAYS | 160 / DAY | $ | 10,560.00 |

ESTIMATED TO 7/7/06

TOTAL COST
BEFORE OVERHEAD & PROFIT     $ 67,796.82

## PART 5
### MTA APPROVED PROTOCOL FOR INSTALLATION OF S/S CURTAINWALL SYSTEM, GLAZING, AND CAULKING

UNCRATE SYSTEM ON SIDEWALK - ERECTING SYSTEM WITH ONE LARGE SCISSOR LIFT, AND A SMALL SCISSOR LIFT ON THE
INSIDE IN ORDER TO INSTALL THE HORIZONTAL MEMBERS. BEFORE STARTING THE GLASS INSTALLATION, THE CURTAINWALL
INSTALLATION OF THE CURTAINWALL MUST BE COMPLETE. BEFORE CAULKING, THE GLASS INSTALLATION MUST BE COMPLETE.

| | | | | | |
|---|---|---|---|---|---|
| LARGE SCISSOR LIFT | | 8 WEEKS | 412 / WEEK | $ | *3296* |
| SMALL SCISSOR LIFT | | 8 WEEKS | 265 / WEEK | $ | *2120* |
| | | | | | *2500* |
| SUPER | 1 MAN | 20 DAYS | 125 / DAY | $ | *24000* |
| FOREMAN | 1 MAN | 40/66 DAYS | *600*/DAY | $ | *28814.76* |
| LABORERS | SEE CERTIFIED PAYROLLS | *523* 67.5 HRS | 54.99 / HR | $ | *68480.2* |
| GLAZIER | SEE CERTIFIED PAYROLLS | *454* 172.5 HRS | 61.30 / HR | $ | |
| DRIVER | 1 MAN | 20 DAYS | 50 / DAY | $ | 1,000.00 |
| TRUCK | | 20 DAYS | 125 / DAY | $ | 2,500.00 |

*FOR 7/1/06 - 9/1/06*

* DOES NOT INCLUDE DELIVERY DAYS FROM PART 4

TOTAL COST $ ~~163,791.99~~ — *122,710.96*
BEFORE OVERHEAD & PROFIT

*8 week duration per daily log*

## PART 6
### REVISED TIMELINE FOR INSTALLATION OF CURTAINWALL, GLAZING, AND CAULKING

| | WEEK 1 & 2 | WEEK 3 & 4 | WEEK 5 & 6 | WEEK 7 & 8 | WEEK 9 & 10 | WEEK 11 & 12 | WEEK 13 & 14 |
|---|---|---|---|---|---|---|---|
| CURTAINWALL INSTALLATION | XXXXXXXXXXX | XXXXXXXXX | XXXXXXXXX | XXXXXXXXX | XXXXXXXXX | | |
| GLAZING | | | | | XXXXXXXXX | XXXXXXXXX | XXXXXXXXX |
| CAULKING | | | | | | XXXXXXXX | XXXXXXXXX |
| LARGE SCISSOR LIFT | XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX | | | | | | |
| SMALL SCISSOR LIFT | XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX | | | | | | |

GLAZING WORK BEGINS ON OPPOSITE SIDE OF CURTAINWALL CREW ON GROUND LEVEL IN WEEK 9
GLAZIERS WORK ON LEFT WHILE IRONWORKERS ARE WORKING ON MAIN ENTRANCE / VESTIBULES IN WEEK 10 AND 11



Hill International, Inc.
One Penn Plaza
Suite 3415
New York, NY 10119
Tel: 212-244-3700
Fax: 212-244-3740
www.hillintl.com

August 13, 2007

Department of Design and Construction
30-30 Thomson Avenue
Long Island City, New York 11101
Attn: Mario Siriban

RE:        **Schomburg Center for Research in Black Culture**
           **CAPIS ID. #: LM001SCHO**
           **Contract #: 20040018658**
           **Change Order No. G055: Curtain Wall Logistics Change**

Dear Mr. Siriban:

Hill International's subcontract for the general construction work, with Beys Contracting
Corp. is in the amount of $4,569,000.00. This change order is issued for the differential
costs in changing the logistics of the delivery and installation of the curtain wall material.
Previously, Beys' subcontractor, Industrial Windows Corporation (IWC) anticipated off-
loading the curtain wall steel and glass panels onto the Lenox Avenue sidewalk (work
area) using an 18 wheeler truck. All the curtain wall material would be laid out at the
work area. The curtain wall mullions would be erected using a Lull machine on the
sidewalk and the installation of the glass panels would lag behind.
After several submissions to the MTA for their approval, Beys/ IWC means and methods
were rejected and a less efficient mobilization was stipulated. The MTA prohibited heavy
machinery and the bulk of the material on the sidewalk. The sidewalk was said to be
incapable of sustaining the delivery truck, Lull and the material in bulk. All rigging had
to be performed from the Lenox Avenue Street because the underlying Street structure
was said to have a greater capacity to withstand heavy loads.
As a result, the revised curtain wall logistics entailed the following: The 18 wheeler truck
would be parked outside the curb of Lenox Avenue Street. A crane was set up in the
Street to pick the material from the truck to the sidewalk work area. This delivery method
would be done in three phases to avoid the accumulation of material on the sidewalk at
one time. The glass panels were crated differently to accommodate for the pick. The
installation was performed without the Lull, causing a less efficient and lengthier
installation time. The revised installation logistics included the use of a small and large
scissor lift to erect the mullions and panels. Because the workers on the two scissor lifts
had to work on a member at a time, there was no installation overlap between the
mullions and glass panels.
In conclusion, this change order is for the difference in costs between the anticipated
curtain wall erection and the stipulated methods which entailed the implementation of
three crane mobilizations and lesser efficient installation method. The costs of the change



**Hill International**

Hill International, Inc.
One Penn Plaza
Suite 3415
New York, NY 10119
Tel: 212-244-3700
Fax: 212-244-3740
www.hillintl.com

order also include storing the material offsite as the MTA advises on the curtain wall erection stipulation.

The change order back ups include the costs for the crane set up, delivery packaging, the machinery used and the manpower expended.

The costs for this change order are in the amount of $110,978. The costs have been reviewed, negotiated and deemed acceptable by Hill.

Please review and approve the attached change order. If you require any additional information, do not hesitate to contact us.

Respectfully submitted,
Hill International, Inc.

Amber France
Resident Engineer

Approved:

_____  _____
Mario Siriban                              Date

cc:     J. Milano, A. Smith, C. Lee w/enc.
        File

# BEYS GENERAL CONSTRUCTION CORP.

## 2520 CONEY ISLAND AVENUE
## BROOKLYN, NEW YORK 11223

### TEL (718) 627-7780
### FAX (718) 336-5960

## FACSIMILE TRANSMITTAL SHEET

| TO: | | FROM: | |
|---|---|---|---|
| Michael Vicario | | Paul Rivera | |
| COMPANY: | | DATE: | |
| Industrial Window Corp. | | 11/15/2007 | |
| FAX NUMBER: | | TOTAL NO. OF PAGES, INCLUDING COVER: | |
| (914) 923-6028 | | 3 | |
| PHONE NUMBER: | | SENDER'S REFERENCE NUMBER: | |
| (914) 923-1800 | | | |
| RE: | | YOUR REFERENCE NUMBER: | |
| Schomburg Center | | | |

☐ URGENT   ☐ FOR REVIEW   ☐ PLEASE COMMENT   ☐ PLEASE REPLY   ☐ PLEASE RECYCLE

Please see the attached letter from Hill International, Inc. Please forward a "Notice of Dispute" to Hill should you choose to pursue this with the Office of the Commissioner.

11/15/2007  14:28    2122443740          HILL INTERNATIONAL          PAGE 01/02



# Hill International, Inc.

One Penn Plaza, Suite 3415
New York, NY 10119
Telephone: (212)244-3700
Fax: (212)244-3740
www.hillintl.com

# FAX TRANSMISSION

| To:<br>Paul Rivera<br>General Manager | From:<br>Suzanne Kaplan<br>Contracts Administrator | |
|---|---|---|
| Company:<br>Beys General Construction Corp. | Operator: | |
| Fax Number:<br>(718) 936-5960 | Date:<br>11/15/07 | Time: |

**Reference:**
 Schomburg Center – Industrial Window Corp.

**Message:**

Please see attached.

Please contact me with any questions.

Thank you,
Suzanne Kaplan
Hill International, Inc.
P: 212-946-2925
F: 212-244-3740
suzannekaplan@hillintl.com

| Number of Pages Transmitted: ___2___<br>(Including this Sheet) | If you have any problems, please call (212)-244-3700 |
|---|---|

PLEASE NOTE: The information contained in this transmission is confidential. If the reader of this message is not the intended recipient, you are notified that any dissemination, distribution, or copying of this communication is prohibited. If you have received this transmission in error, please call us collect and return these materials to us. Return postage will be reimbursed.

11/15/2007   14:28    2122443740                    HILL INTERNATIONAL                          PAGE  02/02



**Hill International**

Hill International, Inc.
One Penn Plaza
Suite 3415
New York, NY  10119
Tel: 212-244-3700
Fax: 212-244-3740
www.hilintl.com

November 15, 2007

<u>Via Facsimile (718) 376-5960</u>

Mr. Paul Rivera, General Manager
Beys General Construction Corp.
2520 Coney Island Avenue
Brooklyn, NY 11223

     **Re:     Notice of Dispute on behalf of Industrial Window Corp.**

Dear Mr. Rivera:

As per our conversation on November 13, 2007 and pursuant to the Agreement between Hill International, Inc. ("Hill") and Beys General Construction Corp. ("Beys"), please forward a written "Notice of Dispute" to Hill on behalf of your subcontractor, Industrial Window Corp. Upon receipt of same, Hill will forward a Notice of Dispute to the Office of the Commissioner for review.

As time is of the essence, please forward the Notice of Dispute to the undersigned immediately to ensure a timely claim with the Office of the Commissioner.

If you have any questions, please do not hesitate to call me at 212-244-3700.

Sincerely,

Hill International, Inc.

Suzanne Kaplan
Assistant Contracts Administrator



# *Industrial Window Corp.*

515 North State Road
Briarcliff Manor, NY 10510
(914) 923-1800 • (914) 923-6028
*email: info@industrialwindow.com*

www.industrialwindow.com

November 19, 2007

Mr. Paul Rivera, General Manager
Beys General Construction Corp.
2520 Coney Island Avenue
Brooklyn, New York 11223

Re:    Notice of Dispute
       Schomburg Center Library

Dear Mr. Rivera:

I received your fax dated November 15, 2007 requesting a "Notice of Dispute" with respect to Industrial Window's change order for the MTA directive. As you know, a change order in the amount of $138,281.43 was negotiated and agreed on between Industrial Window and Beys and Industrial Window has disputed Beys' non-payment of that change order. It is my understanding that DDC rejected Hill's change order request and that Hill rejected Beys' change order request. I also understand that Hill and Beys are obligated to participate with DDC in the dispute resolution process contained in Hill's contract with DDC. Industrial Window is not obligated to and will not participate in that dispute resolution process. Our contract was with Beys and the work required by the change order was, as previously agreed, outside our scope of work.

Thank you for your attention to this matter.

Very truly yours,

Michael Vicario, President



NEW YORK CITY DEPARTMENT OF
DESIGN + CONSTRUCTION

DAVID J. BURNEY, AIA
Commissioner

MARK A. CANU
Associate Commissioner
Technical Support

Monday, December 31, 2007

Ms. Suzanne B. Kaplan
Hill International, Inc
One Penn Plaza
Suite 3415
New York, NY 10119

DDC Dispute # 600
Control No: 28553
FMS_ID: LM001SCHO
Registration No. 20040018658
Project Name: Schomburg Center for Black Research
Date of Notice: November 19, 2007
Description: Hill Int'l on behalf of Beys General Construction Corp.
and Industrial Window Corp., dispute DDC's denial of
their CO # GO55 for $ 110,978.00 for labor and materials furnished
for the projects windows and curtain wall.

Dear Ms. Kaplan:

This is in response to your November 19, 2007 Notice of Dispute, wherein Hill International ("Hill") on behalf of Beys General Construction Corp. ("Beys") and Industrial Window Corp. ("IWC"), disputes DDC's denial of their Change Order GO55 for $110,978.00 for the differential costs in changing the logistics of the delivery and installation of the curtain wall material at the above referenced site because of the MTA prohibition of heavy machinery, the off-loading and the laying out of the bulk of the material on the sidewalk.

My review of the facts in this matter revealed, that while Beys/IWC claim is based on their argument that: "After several submissions to the MTA for their approval, Beys/IWC means and methods were rejected and a less efficient mobilization was stipulated"; my review of the Contract Documents revealed that:

While Item 1.11 of Section VII of the General Conditions clearly states that: "The Contractor shall comply with all local, state and federal laws, rules and regulations affecting the Work of this Project, including without limitation, (1) obtaining all necessary permits of the Work prior to commencement thereof, ..."; and Item 1.2.A of Section 01010 "Summary of Work" states that: **"Contractor to be responsible for notifying the MTA/NYCT prior to start of construction regarding the proximity the area under construction to the 135th Street**



subway station. Contractor to be responsible for obtaining any approvals, permits and sign-offs required by the MTA/NYCT and adhering to any rules and regulations established by the MTA/NYCT regarding construction work adjacent to a subway station. All approvals etc. should be obtained prior to the start of construction." Article 13 "Means and Methods of Construction of DDC/Hill Construction Management/Build Services Requirements Contract" specifically states that: "Unless otherwise expressly provided in this Agreement, the means and methods of construction shall be such as the Contractor may choose; subject, however, to the Commissioner's right to reject means and methods proposed by the Contractor which: (1) will constitute or create a hazard to the Work, or to person or property; ... The Commissioner's approval of the Contractor's means and methods of construction, or his failure to exercise his right to reject such means or methods, shall not relieve the Contractor of his obligation to accomplish the results intended by the Agreement, nor shall the exercise of such right to reject create a cause of action for damages."

Furthermore: Although Item 13.3 'MTA Approvals' of the Project's December 28, 2004 Progress Meeting, clearly states that "Hill to add a checklist of items regarding MTA approval to be addressed by the Contractor immediately upon the start of construction"; none of the submitted documents indicated that this was ever done by either Hill and/or Beys and/or IWC prior to October 2005 submission of the MTA package to the MTA for their review and acceptance.

As such, based on the above, it is my determination that as Hill, Beys & IWC had failed to substantiate their claim for the additional costs which were caused by the MTA rejection of their proposed methods and means, their dispute of DDC's rejection of their CO G055 is hereby denied, and DDC's Program Unit decision is upheld.

If you are not satisfied with this decision, you may within thirty (30) days of your receipt of this determination, present your claim to the Comptroller in accordance with the terms of your Contract.

Very truly yours,

Mark A. Canu
Associate Commissioner


Copy: David J. Burney, AIA -Commissioner

# BEYS GENERAL CONSTRUCTION CORP

## 2520 CONEY ISLAND AVENUE
## BROOKLYN, NEW YORK 11223

### TEL (718) 627-7780
### FAX (718) 336-5960

---

## FACSIMILE TRANSMITTAL SHEET

| TO: | FROM: |
|---|---|
| Michael Vicario | Tony Hamilakis |
| **COMPANY:** | **DATE:** |
| Industrial Window Corp | 01/24/2008 |
| **FAX NUMBER:** | **TOTAL NO. OF PAGES, INCLUDING COVER:** |
| (914) 923 6028 | 3 |
| **PHONE NUMBER:** | **SENDER'S REFERENCE NUMBER:** |
| (914) 923 1800 | |
| **RE:** | **YOUR REFERENCE NUMBER:** |
| Schomburg Center | |

Notes/Comments:

Based on the attached letter from Hill/DDC, you have the opportunity to appeal within 30 days of the rejection notice.

Please forward a "Notice of Dispute" to Hill should you choose to pursue this with the Office of the Commissioner.

01/02/2008  16:42    2122443740                HILL INTERNATIONAL                    PAGE 01/03



# Hill International, Inc.

One Penn Plaza, Suite 3415
New York, NY 10119
Telephone: (212)244-3700
Fax: (212)244-3740
www.hillintl.com

---

## FAX TRANSMISSION

| To:<br>Paul Rivera<br>General Manager | | From:<br>Suzanne Kaplan<br>Contracts Administrator | |
|---|---|---|---|
| Company:<br>Bcys General Construction Corp. | | Operator: | |
| Fax Number:<br>(718) 336-5960 | | Date:<br>1/2/08 | Time: |

**Reference:**
**Schomburg Center for Black Research – Industrial Window Corp. Curtain Wall Claim**

**Message:**

Please see attached.

Please contact me with any questions.

Thank you,
Suzanne Kaplan
Hill International, Inc.
P: 212-946-2925
F: 212-244-3740
suzannekaplan@hillintl.com

---

| Number of Pages Transmitted:  3<br>*(including this Sheet)* | If you have any problems, please call (212)-244-3700 |
|---|---|

PLEASE NOTE: The information contained in this transmission is confidential. If the reader of this message is not the intended recipient, you are notified that any dissemination, distribution, or copying of this communication is prohibited. If you have received this transmission in error, please call us collect and return these materials to us. Return postage will be reimbursed.



# *Industrial Window Corp.*

515 North State Road
Briarcliff Manor, NY 10510
(914) 923-1800 • (914) 923-6028
email: info@industrialwindow.com

www.industrialwindow.com

January 29, 2008

**VIA FACSIMILE TO (718) 627-7780**
**AND FIRST CLASS MAIL**

Mr. Paul Rivera, General Manager
Beys General Construction Corp.
2520 Coney Island Avenue
Brooklyn, New York 11223

> Re:    Notice of Dispute
>        Schomburg Center Library

Dear Mr. Rivera:

I received your faxes dated January 24, 2008 and January 25, 2008 regarding the DDC's rejection of CO#GO55 and advising that IWC must appeal the decision to the Office of the Comptroller within 30 days.  As you know, a change order in the amount of $138,281.43 was negotiated and agreed on between Industrial Window and Beys and Industrial Window has disputed Beys' non-payment of that change order.

DDC rejection of the change order request was based on provisions which were not contained in our contract.  In addition, the City's dispute resolution process is also not contained or incorporated into our contract so that IWC is not obligated to and will not participate in that dispute resolution process.  Our contract was with Beys and the work required by the change order was, as previously agreed, outside our scope of work.

Thank you for your attention to this matter.

Very truly yours,

Michael Vicario, President