WELBY, BRADY & GREENBLATT, LLP
Anthony P. Carlucci, Jr., Esq. [AC7565]
Attorneys for Plaintiff
Westchester Financial Center
11 Martine Avenue, 15th Floor
White Plains, New York 10606
Telephone (914) 428-2100
Telefax (914) 428-2172
ACarlucci@wbgllp.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X  Civil Action No. 07-CIV-10959
INDUSTRIAL WINDOW CORP.,                                            (Judge Rakoff)

                                        Plaintiff,    **SUPPLEMENTAL**
                                                                             **AFFIDAVIT OF MICHAEL**
       -against-                                                           **VICARIO IN OPPOSITION**
                                                                                 **TO MOTION FOR SUMMARY**
FEDERAL INSURANCE COMPANY,                                          **JUDGMENT**

                                        Defendant.    ECF Case
-----------------------------------------------------------------X

STATE OF NEW YORK    }
                                } SS.:
COUNTY OF WESTCHESTER }

       MICHAEL VICARIO, of full age, being duly sworn, says:

       1.       I am the president of Industrial Window Corp. ("IWC"), the plaintiff in the action. I have personal knowledge of the matters set forth below, or the same are stated by me, upon information and belief, based upon books and records of the plaintiff. This affidavit is submitted, by leave of court (Hon. Jed F. Rakoff, U.S.D.J.) at oral argument held on March 7, 2008, as the motion to dismiss made by defendant Federal Insurance Company ("Federal") is to be decided as one for summary judgment.

2. One matter, which counsel advises me was raised by Judge Rakoff at oral argument, was that the Court wished to know if counsel for IWC reviewed the Subcontract between IWC and Federal's principal, Beys General Construction Corp. ("Beys"), before IWC executed the Subcontract. The answer to that inquiry is that IWC did <u>not</u> obtain review of the Subcontract by counsel before entering into it.

3. And, while IWC was aware, generally, that (as is the case with virtually all subcontracts) our Subcontract with Beys incorporated by reference the prime contract (between DDC and construction manager Hill International, Inc. ("Hill"), it was and is our understanding that a broad "incorporation by reference" provision, whereby a subcontract purports to incorporate by reference "all" of the terms of an "upstream" contract, really only incorporates such terms of the upstream contract as concern the scope, quality, character and manner of the work to be performed.

4. We would not have understood provisions concerning conflict resolution procedures, generally, to be brought into our subcontract by reference, unless there were very specific language to that effect. Especially, we would not expect absent the clearest of language to be bound to the complicated set of procedures involving the PPB rules, the Commissioner of DDC, and Contract Dispute Resolution Board, et cetera, as frankly that would not make any sense to us, unless we were contracting directly with the City (or a construction manager acting as an agent for the City). This is, of course, because contract disputes might, or might not, involve any interests of the City and, to the extent that they did not, there would be no reason for the dispute resolution apparatus that exists for the benefit of the City to be brought into play. There is no reason why the Commissioner of DDC or other City agencies should become embroiled in disputes between second and third-tier contractors.

5.  In addition, as has already been discussed in IWC's papers, even where a dispute might include, together with claims against a private entity, claims against DDC (or claims as to which the identity of the party responsible might be unclear, or where both the City and a contractor intermediate between the City and IWC might be liable) unless the City is disposed to address the matter informally, *e.g.*, as part of closeout negotiations with a general contractor, the only way for the lower-tier subcontractor to pursue damages against the City is via the so-called liquidating agreement. That of course is where each party in the "chain" between the claiming subcontractor and the party that contracted directly with the City enters into a written agreement whereby, as to each "link," the "upstream" party makes a *pro forma* admission of liability, and the "downstream" party agrees to "liquidate" the claim and to accept in full settlement whatever the upstream party can obtain (in litigation, arbitration, or such other dispute resolution procedure as its contract provides) from the party above it in the "chain."

6.  In the context of the Subcontract in this case, we did not understand, and we would never have understood, that conflict resolution procedures under the PPB rules or involving the City resolution mechanisms would have been *available*, much less *required*, unless there were written into our Subcontract. In addition to an express provision clearly providing for the use of the PPB procedures, there would need to be formal assurance that if we needed to assert claims even in part, or in the alternative, directed against the City, every party in between IWC and DDC would be <u>required</u> to enter into a liquidating agreement. Without such assurances, we would in effect be agreeing to give up the right to litigate, in favor of a set of procedures which, in addition to being cumbersome and time-consuming, would be foreclosed to us altogether, unless not only our contracting partner (Beys) but an *additional* party, Hill were disposed to come to our aid. Absent such an undertaking, Beys or Hill might elect to withhold

assistance, or decline to make the necessary admission of liability to support a liquidating agreement. Inasmuch as contractors' claims may be complex, and may involve claims (such as for delays) where the party or parties responsible may be in doubt, we would thus be placed at a distinct disadvantage vis-à-vis the intermediate parties, which could insist (as a precondition for entering into a liquidating agreement) that IWC forego, or make concessions on, so much of its claims as might be against them.

7. We certainly did not understand ourselves to be agreeing to such an arrangement, and I propose it is unreasonable to assume that any subcontractor would willingly do so. Nor was there any liquidating agreement between IWC and Beys (or, so far as I am aware, between Beys and Hill) as might have permitted IWC to make use of the PPB procedures to the extent its claim was largely (although not wholly) against the City.

8. This brings us to the further matter of which IWC would like the Court to be aware. This action is in large part, but by no means entirely, based upon proposed change orders not approved by the City, of which the largest was that for $138,281.43, based on extra costs incurred when the MTA refused to permit IWC to unload stainless steel mullions onto Lenox Avenue using a truck, and to install glass panels using a Lull machine on the sidewalk. (IWC was made to use a crane and scissor lift, to unload and install the curtain wall.)

9. The Court is referred to Exhibit A annexed hereto, which is a copy of a letter from Mr. Carlucci, IWC's attorney, to Mr. Cooke, Federal's attorney, dated November 14, 2007 (and, specifically, to page 2 thereof). There is set forth in this letter an itemization of IWC's claim, from which may be seen that unpaid contract and retainage (in the amount of $75,599.43) is a component of IWC's claim.

10. Accordingly, it is not accurate to suggest that this action amounts to IWC wrongfully suing Beys' surety, when its grievance is really directed against DDC for refusing approval for change orders which remedy had to be pursued under the PPB rules. It is not that the surety for Beys, the latter having "cooperated" with IWC by informally passing the $138,000 change order "up the chain," is being forced to defend an action in which only "bad guy" is the City, and no real interests or wrongdoing by Beys are implicated. Indeed, so far as I am aware, it is not disputed on the merits that but for the technical defenses (based on the alleged requirement that disputes be submitted under the PPB rules) Beys is indebted to IWC at least for the $75,599.43 retainage and contract balance.

11. As my understanding is that Federal's reply has modified somewhat its position (in an effort to convince the Court that there is no ambiguity in the Subcontract) to carve out disputes solely between IWC and Beys/Federal from the requirement of submission under the PPB procedures, IWC should be entitled to partial summary judgment for the $75,599.43 retainage and contract balance amount. It is, of course, not a defense to liability for payment that the City or Hill may not have paid these amounts to their respective "downstream" parties. <u>West-Fair Elec. Contractors v. Aetna Cas. & Sur. Co.</u>, 87 N.Y.2d 148, 638 N.Y.S.2d 394 (1995). Federal should not be permitted to argue that this $75,599.43 component of IWC's claim must be dismissed because it was not submitted to alternative dispute resolution under the PPB Rules, while at the same time arguing that the Subcontract is not ambiguous because claims such as that for the contract balance and retainage, being exclusively between IWC and Beys, are not within the ambit of the ADR requirement.

12. For all of the foregoing reasons, and for the further reasons set forth in the accompanying affirmation by Geoffrey S. Pope, Federal's motion should be denied in its entirety.

_____
MICHAEL VICARIO

Sworn to and subscribed
before me this ___ day of ___
April 2008.

_____
Notary Public

LYNN LEE CIANO
Notary Public - State of New York
NO. 01CI6100264
Qualified in Dutchess County
My Commission Expires _____

**Exhibit A**

## WELBY, BRADY & GREENBLATT, LLP
ATTORNEYS AT LAW
WESTCHESTER FINANCIAL CENTER
11 MARTINE AVENUE
WHITE PLAINS, NEW YORK 10606
TEL: (914) 428-2100
FAX: (914) 428-2172
www.wbgllp.com

GERARD P. BRADY*
ANTHONY P. CARLUCCI, JR.*
MICHAEL E. GREENBLATT*+×∆
ALEXANDER A. MIUCCIO
PAUL G. RYAN*+
ALAN SINGER
THOMAS S. TRIPODIANOS
THOMAS H. WELBY+

MICHAEL I. SILVERSTEIN
NICHOLAS A. CARRE
ADAM W. DOWNS*+
MARK CERMELE+
S. DEAN KIM+
MICHAEL R. WOOD

*ALSO ADMITTED IN NEW JERSEY
+ALSO ADMITTED IN CONNECTICUT
×ALSO ADMITTED IN MASSACHUSETTS
∆ALSO ADMITTED IN PENNSYLVANIA

OF COUNSEL:
LESTER GULITZ
GEOFFREY S. POPE*×
ROBERT G. CORKE
DONNA M. BRADY*
JOHN J.P. KROL

NEW JERSEY OFFICE
123 NORTH UNION AVENUE
SUITE 103
CRANFORD, NEW JERSEY 07016
(908) 272-7870
(908) 272-2656 (FAX)

CONNECTICUT OFFICE
ONE LANDMARK SQUARE
FIFTH FLOOR
STAMFORD, CONNECTICUT 06901
(203) 363-0081
(203) 363-0071 (FAX)

November 14, 2007

**VIA FACSIMILE TO (516) 712-4013
AND FIRST-CLASS MAIL**

Joseph J. Cooke, Esq.
Milber Makris Plousadis & Seiden, LLP
1000 Woodbury Road - Suite 402
Woodbury, NY 11797

    Re:    Verified Statement of Lien
           Project:    Schomburg Center for Research in Black Culture -
                     General Construction Contract for Renovations and
                     Mechanical Equipment Upgrades, Contract 1
           Contract No.:    20040018658
           General Contractor:    Hill International, Inc.
           Lienor:    Industrial Window Corp.
           Industrial Window – Schomburg
           File No. 418.053

Dear Mr. Cooke:

As you know, this firm represents Industrial Window Corp. ("IWC") in connection with the above-referenced matter. This letter shall serve as a follow-up to our conversation of yesterday, during which you agreed to provide IWC with an extension of time to serve a Verified Statement up to and including December 13, 2007. Thank you for your courtesy in this regard.

**WELBY, BRADY & GREENBLATT, LLP**
ATTORNEYS AT LAW

Joseph J. Cooke, Esq.
Page 2
November 14, 2007

As discussed in our conversation, the amount set forth in the Mechanic's Lien ($256,256.71) is calculated as follows:

| | | | |
|---|---|---|---|
| 1. | Base Contract: | | $ 1,258,000.00 |
| 2. | Approved Change Orders: | | |
| | - Change Order #1 (DEPP GL) | $ 58,314.00 | |
| | - Change Order #3 (Brake Metal) | 1,950.00 | |
| | - Change Order #7 (Push Plates) | 736.89 | |
| | - Change Order #8 (Wall Board Installation) | 1,568.05 | |
| | - Change Order #9 (Drilling) | 5,314.00 | |
| | Total Approved Change Orders | | 67,882.94 |
| 3. | Pending Change Orders: | | |
| | - Stainless Steel Convector Covers | 28,858.00 | |
| | - MTA Delivery Directive | 138,281.43 | |
| | - Bird Screen | 3,590.00 | |
| | - Wood Moldings at Reading Room | 1,349.76 | |
| | - Change Gage for Stainless Steel Convector | 4,101.86 | |
| | - Stainless Steel Canopy Closure Pieces | 1,391.80 | |
| | - 9" Saddles | 574.31 | |
| | - Conceal Steel Beam | 1,855.51 | |
| | - Additional Pole Handles | 654.61 | |
| | Total Pending Change Orders | | 180,657.28 |
| 4. | Adjusted Contract | | 1,506,540.22 |
| | Paid to Date | | 1,250,283.51 |
| | Balance | | $ 256,256.71 |

Please note, I have recently been advised that the outstanding balance should be reduced by $1,349.76 because the additional work for wood moldings at Reading Room referenced above was not completed so that the outstanding balance is now $254,906.95. The outstanding balance includes $75,599.43 for IWC's contract balance and retainage, which, I do not believe, is in dispute. Please advise when IWC can expect to receive payment for the outstanding undisputed balance.

**WELBY, BRADY & GREENBLATT, LLP**
ATTORNEYS AT LAW

Joseph J. Cooke, Esq.
Page 3
November 14, 2007

I look forward to hearing from you.

                            Very truly yours,

                            Anthony P. Carlucci, Jr.

APC/tp

cc:    Raymond Beninato, Vice President, Industrial Window Corp.
        (Via Facsimile Only to 914-923-6028)