UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
INDUSTRIAL WINDOW CORP,

Civ. No.: 07 CV 10959
(Rakoff, J.)

                Plaintiff,

      -against-

**AFFIRMATION IN FURTHER
SUPPORT OF MOTION FOR
<u>SUMMARY JUDGMENT</u>**

FEDERAL INSURANCE COMPANY,

                Defendant.
------------------------------------------------------------------X

       Joseph J. Cooke, Esq., an attorney duly admitted to practice law before this Court, affirms the following to be true under penalty of perjury:

       1.     I am a member of the law firm of Milber Makris Plousadis & Seiden, LLP, attorneys for defendant, Federal Insurance Company ("Federal"), and as such am fully familiar with the facts stated herein.

       2.     I submit this affirmation in further support of Federal's motion to dismiss, now converted by the Court to a motion for summary judgment pursuant to FRCP Rule 56, seeking dismissal of the Complaint of plaintiff, Industrial Window Corp. ("IWC"), upon the ground that the instant action is barred by the resolution of disputes provisions included in the subcontract between IWC and Beys General Construction Corp. ("Beys"). This affirmation is submitted specifically in reply to the affirmation of Geoffrey S. Pope, Esq.

<u>The Resolution of Dispute Provisions Were Incorporated By Reference In The Subcontract</u>

       3.     IWC continues to assert that the language of the subcontract is not sufficiently clear to compel its participation in the resolution of dispute procedures set forth in the prime contract. To support this position, IWC takes liberties with its interpretation of the holdings in <u>General Railway Signal Corp. v. L.K. Compstock & Co., Inc.</u>, 254 A.D.2d 759, 678 N.Y.S.2d

208 (4th Dept. 1998) and <u>Aerotech World Trade Ltd v. Excalibur Systems, Inc.</u>, 236 A.D.2d 609,
654 N.Y.S.2d 386 (2d Dept. 1997). IWC incorrectly intimates that these cases stand for the
proposition that an arbitration or ADR provision cannot be incorporated by reference from a
separate agreement.

4.    As noted in Federal's Reply Memorandum of Law, <u>General Railway</u> does not
recite the language upon which the Court reached its conclusion other than to reference the fact
that it was a "flow down" provision. It is impossible from that description alone to compare the
language of the Beys-IWC subcontract. Consequently, <u>General Railway</u>, is not particularly
instructive.

5.    In <u>Aerotech</u>, the Appellate Division specifically held that "an agreement to
arbitrate can be incorporated by reference". 236 A.D.2d at 611. The question therefore is not
whether an ADR provision can be incorporated by reference but rather what language is
sufficiently clear to show an intent to submit to such procedures.

6.    In <u>Level Export Corp. v. Wolz, Alken & Co.</u>, 305 N.Y. 82, 111 N.E.2d 218
(1953), the Court of Appeals was faced with a factual scenario remarkably similar to that
presented in the current case. In <u>Level Export</u>, a buyer of commodities entered into two virtually
identical agreements which contained language stating:

> Salesnote is subject to the provisions of Standard
> Cotton Textile Salesnote which, by this reference, is
> incorporated as a part of this agreement and together
> herewith constitutes the entire contract between buyer
> and seller. No variation therefrom shall be valid unless
> accepted in writing.

305 N.Y. at 84.

7.     The Standard Cotton Textile Salesnote referenced in the agreement contained ten provisions, one of which was an arbitration clause requiring that the parties submits all disputes to binding arbitration.  When a dispute subsequently arose, the buyer contended that it was not bound by the arbitration provision in the separately referenced document and argued that it had not been informed in any way that the provisions of the Standard Cotton Textile Salesnote contained any provision requiring arbitration of any controversy between the parties.

8.     In rejecting the buyer's arguments, the Court of Appeals held:

> Each of those contracts contains the statement that it is made "subject to the provisions of Standard Cotton Textile Salesnote" which, as we have seen, was expressly incorporated as a part of this agreement and together herewith constitutes the entire contract between buyer and seller.  Difficult it would be to find words more clearly to express the contractual intent of the parties.  There is no evidence that an attempt was made to limit the application of the standard cotton textile salesnote nor was there indication that any one of the ten subdivisions of the sales note was not intended to apply…. The effect of the foregoing contract provisions was to adopt and to integrate into each purchase agreement, the terms of the standard cotton textile salesnote.

305 N.Y. at 86.

9.     The logic applied by the Court of Appeals in <u>Level Export</u> is equally applicable to construction contracts.  <u>Liberty Mgmt. & Constr., Ltd. v. Fifth Avenue and Sixty-Sixth Street Corporation</u>, 208 A.D.2d 73, 620 N.Y.S.2d 827 (1st Dept. 1995).  In <u>Liberty Management</u>, the general contractor entered into an agreement with an owner using a standard AIA contract which stated that it incorporated by reference a separate document entitled "AIA General Conditions".  The general conditions referenced contained a clause providing that any controversy arising out

of the contract would be settled by arbitration. In finding that the parties were bound to arbitrate, the First Department held:

> Nor is it of any consequence that the arbitration clause appears in the general conditions, rather than the main contract. Plaintiff's proposal states that it had "carefully examined" and "understood" the designated documents, including the General Conditions, and that its bid was made "in strict compliance with the proposed Contract Documents". Moreover, the AIA contract expressly provides, "The 1987 edition of AIA Document A201, General Conditions of the Contract for Construction, is adopted in this document by reference.

208 A.D.2d at 77. See also, Gabriel Capital L.P. v. Caib Investment Bank, 28 A.D.3d 376, 814 N.Y.S.2d 66 (1st Dept. 2006).

10.    The language contained in the subcontract between Beys and IWC mirrors that described by the Court in Liberty Management. First, Article 1.1 of the Beys-IWC subcontract specifically lists the prime contract between DDC and Hill as a "contract document". That prime contract is the document which contains the dispute resolution provision. Second, Section 2.2 of the IWC contract defines the term "contract documents" to include all of the documents listed in Article 1.1.

> The contract documents form the contract between contractor and subcontractor. References in the contract documents to "the contract", "this contract" or "the construction contract" shall be deemed to include all of the contract documents. Reference to "this agreement" or "the agreement" shall refer to this instrument, which is one of the contract documents.

11.    Moreover, Article 6.2 of the Beys-IWC subcontract provides:

> Subcontract represents and warrants that:

> .    .    .

> (e) Subcontractor <u>has carefully examined the Contract Documents</u> and the site and, from subcontractor's own investigations, is satisfied as to the location of the work, the character, quality and quantity of surface and other facilities needed for the performance of the work, the general and local conditions, <u>and all other conditions or items which may effect the Work</u>."    (emphasis supplied).

12.    The Beys-IWC subcontract also includes provisions in Articles 21.5 and 21.7 indicating that no modifications may be made absent a writing that the subcontract represents the entire agreement between the parties.

13.    As if these virtually identical provisions were not enough, the Beys-IWC subcontract contains a clause not mentioned in <u>Liberty Management</u>; namely Article 21.2, which specifically tells the subcontractor that disputes must be resolved in accordance with the "Contract Documents".

14.    As noted by the Court in <u>Level Export</u> and <u>Liberty Management</u>, ignorance of contract provisions will not relieve a party from its contractual obligations. A party who signs or accepts a written contract, in the absence of fraud or other wrongful act on the part of another contracting party, is conclusively presumed to know its contents and to ascent to them. The subjective understanding of a party, such as is expressed in the supplemental affidavit of Michael Vicario, is irrelevant. <u>Tarulli v. Circuit City Stores, Inc.</u>, 333 F.Supp.2d 151 (S.D.N.Y. 2004); <u>Bishop v. Maurer</u>, 33 A.D.3d 497, 823 N.Y.S.2d 366 (1st Dept. 2006).

15.    In interpreting the contract, it must be read as a whole to determine the parties'

purpose and intent, giving practical interpretation to the language used so that the parties'

expectations are realized. Omni Berkshire Corp. v. Wells Fargo Bank, N.A., 307 F.Supp.2d 534

(S.D.N.Y. 2004). The Beys-IWC subcontract incorporates the dispute resolution provisions of

the prime contract by reference in a manner entirely consistent with the holdings in Level Export

and Liberty Management. As such, IWC is contractually bound to follow those procedures.

The Existence Of A Claim For Contract Balance Does Not Impact The Issue Concerning The
Change Orders

16.    IWC argues that even were the change orders subject to the prime contract dispute

resolution procedures, its complaint would continue because it includes a claim for contract

balance which Federal has conceded would not be subject to ADR. The fact, however, that the

elimination of the change order claims would still leave a claim for contract balance is irrelevant

to the Court's determination as to whether those change orders must be pursued through the

alternate dispute resolution procedures.

17.    Moreover, Beys recently received a reduction in its retainage for the project from

five percent (5%) to one percent (1%). Accordingly, Beys prepared and forwarded to IWC a

partial release which would authorize payment to IWC of an additional $51,152.98. (A copy of

the partial release and the cover letter from Beys is annexed hereto as Exhibit "A"). The contract

balance claim as indicated in the supplemental affidavit of Michael Vicario totals $75,599.43.

Once the release is signed and the additional payment made, the claim involving the contract

balance would be only approximately $24,000.00; far below the monetary jurisdictional limit of

this Court. Regardless of whether the remaining claim would have to be brought in State Court,

the issue has no impact on the fact that the Beys-IWC subcontract mandates that the change orders be pursued through the dispute resolution procedure set forth in the prime contract.

<u>The Issue Of The Absence Of Contractual Privity Is Moot</u>

18.    Without rehashing the entire argument previously set forth in Point III of Federal's Reply Memorandum of Law, suffice it to say that the question of whether IWC was placed at Beys "mercy" is speculative and now, moot.

19.    As indicated in the Reply Affidavit of George Kougentakis, and not denied by IWC, both Hill and Beys afforded IWC the full opportunity to pursue its change order claims through the contractually mandated dispute resolution procedures.  IWC twice rejected those opportunities (See Exhibits D and E to Reply Affidavit of G. Kougentakis).

20.    Having made a conscious decision to refuse to pursue the change orders with DDC, IWC cannot be heard to use the absence of a contractually mandated liquidating agreement to justify its conduct.

21.    For the foregoing reasons, Federal's motion for summary judgment should be granted.

Dated: Woodbury, New York
       April 18, 2008

Joseph J. Cooke

7

```
*************** -COMM. JOURNAL- ******************* DATE APR-18-2008 ***** TIME 12:16 ********

        MODE = MEMORY TRANSMISSION              START=APR-18 12:11    END=APR-18 12:16

        FILE NO.=280

STN    COMM.      ONE-TOUCH/   STATION NAME/EMAIL ADDRESS/TELEPHONE NO.    PAGES     DURATION
NO.               ABBR NO.

001    OK         ¤              19149236028                              002/002   00:00:27


                                                    -BEYS                   -

***** UF-8000 v2 ******************* -          - ***** -     718 336 5960- *********
```

## Letter of Transmittal

| | |
|---|---|
| Date: | April 18, 2008 |
| From: | Beys General Construction Corp.<br>2520 Coney Island Avenue<br>Brooklyn, New York 11223 |
| To: | INDUSTRIAL WINDOW CORP.<br>515 North State Road<br>Briarcliff Manor, NY  10510 |
| | ***Fax: (914) 923-6028*** |
| Re: | **THE CITY OF NEW YORK<br>DEPARTMENT OF DESIGN & CONSTRUCTION<br>SCHOMBURG CENTER FOR RESEARCH IN BLACK CULTURE<br>GENERAL CONSTRUCTION CONTRACT FOR<br>RENOVATIONS AND MECHANICAL EQUIPMENT UPGRADES<br>CONTRACT 1, CAPIS I.D. #LM00SCHO, CONTRACT #20040018658** |

**RELEASE OF 4% RETAINAGE.**

---

***RELEASE FORM TO BE SIGNED, NOTARIZED AND RETURN TO BEYS.***

---

These are transmitted as checked below:
- For approval      _ Approved as submitted
*x For your actions* _ Approved as noted
_ As requested      _ Returned for corrections
_ For review & comment _
_ Resubmit_____copies for approval

REMARKS:

SIGNED: _____
        Anthony Hamilakis

# Letter of Transmittal

Date:       April 18, 2008

From:       Beys General Construction Corp.
            2520 Coney Island Avenue
            Brooklyn, New York 11223

To:         INDUSTRIAL WINDOW CORP.
            515 North State Road
            Briarcliff Manor, NY  10510

            *Fax:  (914) 923-6028*

Re:         **THE CITY OF NEW YORK**
            **DEPARTMENT OF DESIGN & CONSTRUCTION**
            **SCHOMBURG CENTER FOR RESEARCH IN BLACK CULTURE**
            **GENERAL CONSTRUCTION CONTRACT FOR**
            **RENOVATIONS AND MECHANICAL EQUIPMENT UPGRADES**
            **CONTRACT 1, CAPIS I.D. #LM00SCHO, CONTRACT #20040018658**

            **RELEASE OF 4% RETAINAGE.**

| |
|---|
| *RELEASE FORM TO BE SIGNED, NOTARIZED AND RETURN TO BEYS.* |
| |
| |
| |

These are transmitted as checked below:
- For approval        _ Approved as submitted
*x For your actions*  _ Approved as noted
_ As requested        _ Returned for corrections
_ For review & comment _
_ Resubmit_____copies for approval

REMARKS:

SIGNED: _____
            Anthony Hamilakis

**RECEIPT AND WAIVER OF MECHANICS' LIEN RIGHTS**

**PARTIAL RELEASE**

To all to whom these presents shall come or may concren, know that
**INDUSTRIAL WINDOW CORP.**
**515 NORTH STATE ROAD**
**NY     10510**
a corporation organized under the STATE OF    , as RELEASOR, acknowledges having
received     $51,152.98 from
**BEYS GENERAL CONSTRUCTION CORP**
**2520 Coney Island Avenue**
**Brooklyn, NY 11223**
as final and full payment of all work contracted by the undersigned delivered or
furnished to (or performed at)
**SCHOMBERG CENTER**

**Owner Contract #  LM001DCHO CAPIS ID**
and for all value received hereby releases and discharges BEYS GENERAL CONSTRUCTION CORP ,
as RELEASEE, RELEASEE'S heirs, executors, administrators, successors and assigns
from all actions, suits, debts, dues, sum of money, accounts, reckonings, bonds,
bills, specialties, covenants, contract, controversies, agreements, promises,
variances, trespasses, damages, judgements, extends, executions, claims and demands
whatsoever, in law, admiralty or equity, which against THE RELEASEE, THE RELEASOR,
RELEASOR'S heirs, executors, administrators, successors and assigns ever had, now
have or hereafter can, shall or may have, for upon or by reason of any matter,
cause or thing whatsoever from the beginning of the world to the day of this release.

The RELEASOR also acknowledges that he had received the total amount of **1302,045.45**
(including the above amount) to date for the above project.
                                                              **1% retainage$13,152.98**

Whenever the text hereof require, the use of singular number shall include the
appropriate plural number as the text of the within instrument may require.

This RELEASE may not be changed orally.

In WITNESS WHEREOF, the RELEASOR has caused this RELEASE to be executed by its duly
authorized officers and its corporate seal to be hereunto affixed on _____
                                                                        (DATE)

                              By:_____

                                      (Sign here)


                                 _____
                                      (Print Name & Title)

State of _____, County of _____

On the _____ day of _____, 19_____ before me _____
personally came to me known, who, by me duly sworn, did depose and say that deponent
resides at _____ that
deponent is the _____ of **INDUSTRIAL WINDOW CORP.**          ,
the corporation described in, and which executed the foregoing release, that deponent
knows the seal of the corporation, that the seal affixed to the release to be corporate
seal, that it was affixed by order of the board of directors of the corporation; and
deponent signed depont's name by like order.


                                 _____
                                      Notary Public

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK )
) ss.:
COUNTY OF NASSAU )

    **LISA FRANZINO,** sworn, deposes and says, that deponent is not a party to the action, is over 18 years of age and resides at Seaford, New York.

    That on the 18th day of April, 2008, deponent served the within **AFFIRMATION IN FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENT** upon:

Anthony P. Carlucci, Esq. (AC7565)
WELBY, BRADY & GREENBLATT, LLP
Attorneys for Plaintiff
Industrial Window Corp.
11 Martine Avenue, 15th Floor
White Plains, New York 10606
(914) 428-2100

the attorney(s) for the respective parties in this action, at the above address(es) designated by said attorney(s) for that purpose by depositing same enclosed in a postpaid, properly addressed wrapper, in an official depository under the exclusive care and custody of the United States Post Office within the State of New York.

                                         **LISA FRANZINO**

Sworn to before me this
18th day of April, 2008

**NOTARY PUBLIC**

JOSEPH J. COOKE
Notary Public, State of New York
No. 02CO06097233
Qualified In Suffolk County
Commission Expires 5/18 20 11