```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------- x
INDUSTRIAL WINDOW CORP.,                :
                                        :
            Plaintiff,                  :   07 Civ. 10959 (JSR)
                                        :
      -v-                               :   MEMORANDUM
                                        :
FEDERAL INSURANCE COMPANY,              :
                                        :
            Defendant.                  :
--------------------------------------- x
```

JED S. RAKOFF, U.S.D.J.

Plaintiff Industrial Window Corp. ("IWC") filed the above-captioned case on December 3, 2007, under a payment bond made by defendant Federal Insurance Company ("Federal"), as surety and Beys General Construction Corp. ("Beys") as principal, with regard to Contract No. 20040018658. IWC seeks $254,906.95 in damages resulting from Beys' breach of contract and failure to pay for work, labor and materials. On February 1, 2008, Federal moved to dismiss the complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, as barred by Alternative Dispute Resolution ("ADR") provisions contained in a contract incorporated by reference into the contract and payment bond at issue here. In the alternative, Federal requested that the Court convert its motion into one for summary judgment and grant summary judgment in its favor. The Court heard oral argument on the motion on March 7, 2008. At that time, pursuant to Fed. R. Civ. P. 12(d), the Court converted the motion to dismiss into a motion for summary judgment and set a schedule by which the parties were to submit any further evidence or briefing that they desired. See transcript 3/7/08. After receiving supplemental

briefing the Court, by order dated May 6, 2008, denied Federal's motion for summary judgment. This Memorandum explains the reasons for that decision.

The facts, either undisputed or, where disputed, taken most favorably to the non-moving party (IWC), are as follows. On February 11, 2004, the City of New York Department of Design and Construction ("DDC") entered into a contract with Hill International, Inc. ("Hill") to manage various capital improvement projects across New York. One of these projects was the construction of the Schomburg Center for Research in Black Culture in Brooklyn ("Center"). See Affidavit of Michael Vicario in Opposition to Motion to Dismiss dated Feb. 21, 2008 ("Vicario Aff.") ¶ 6. Hill then entered into a contract with Beys to act as general contractor on the project. Id. Beys posted a payment bond from Federal which stated that a copy of the Beys/Hill contract was "annexed to and hereby made a part of this bond as though herein set forth in full." Affidavit of George Kougentakis in Support of Federal's Motion to Dismiss dated Feb. 4, 2008 ("Kougentakis Aff."), Exhibit B.

On September 27, 2005, Beys entered into a subcontract with IWC to install a curtain wall system at the Center. After the Metropolitan Transit Authority ("MTA") rejected IWC's initial plan for installing the curtain wall system, IWC had to utilize an alternative method that was significantly more costly. IWC thereafter proposed to Beys a "change order" in the amount of $138,281.43. Following discussions among IWC, Beys and Hill, a

2

change order in the amount of $110,978.00 was submitted by Hill to DDC. Vicario Aff. ¶ 7. DDC, however, denied the request for approval of the change order. Hill then advised Beys, by letter dated 11/15/07, that if IWC wished to further pursue the change order claim, Hill would submit it to the Commissioner's office for review. Beys asked IWC if it wished to pursue the claim, but IWC responded that it was "not obligated to and will not participate in th[e] dispute resolution process." See Reply Affidavit of George Kougentakis dated February 29, 2008 ("Kougentakis Reply Aff.") ¶ 5 & Exhibit D. Hill submitted the request to the Commissioner of DDC anyway. When the Commissioner's office denied the request, Hill offered to submit the claim to the Comptroller's office for appeal. IWC rejected the offer, stating "DDC [sic] rejection of the change order request was based on provisions which were not contained in our contract. In addition, the City's dispute resolution process is also not contained or incorporated into our contract so that IWC is not obligated to and will not participate in that dispute resolution process." Id. ¶. 6 & Exhibit F.

Instead, IWC brought the instant action against Federal to recover $254,906.95. In addition to the cost of the denied change order, IWC's claim also includes "unpaid contract and retainage" against Beys in the amount of $75,599.43. See Supplemental Affidavit of Michael Vicario in Opposition to Motion for Summary Judgment dated April 15, 2008 ("Supp. Vicario Aff.") ¶¶ 9-10.

Federal responded by bringing the instant motion, arguing that IWC's action is barred by the ADR procedures contained in the contract between DDC and Hill.  The DDC/Hill contract is 65 pages long and includes hundreds of provisions, among them Article 29, entitled Resolution of Disputes.  It provides that "All disputes between the City and the Contractor of the kind delineated in this article that arise under, or by virtue of, this Contract shall be finally resolved in accordance with the provisions of this article and the PPB rules.  The procedure for resolving all disputes of the kind delineated herein shall be the exclusive means of resolving any such disputes."  Kougentakis Aff., Exhibit A, Article 29.1.  The Article goes on to provide for an elaborate dispute resolution process including presentation of disputes to the Commissioner of the DDC (29.4), appeal to the Comptroller of the City of New York (29.5), appeal to the Contract Dispute Resolution Board (29.6 and 29.7), and final appeal to a court pursuant to Article 78 of the New York Civil Practice Laws and Rules (29.7.6).

The contract between Hill and Beys, on the other hand, is only 14 pages long and says nothing explicit about ADR.  Instead, Article 8, entitled Contract Documents, provides that the Contract documents "which comprise the entire agreement between [Hill] and [Beys] . . . consist of the following: . . . 8.1.9 Client Agreement [defined elsewhere as the Agreement between DDC and Hill.]"  Article 9 of Hill/Beys contract further provides: "To the extent applicable to the Work to be performed by [Beys] under this Agreement, the provisions of the Client Agreement, addenda, amendments and other

4

documents forming a part of the Client Agreement are hereby incorporated into this Agreement with the same force and effect as though set forth in full herein.  [Beys] shall be bound to [Hill], to the same extent that [Hill] is bound to the City, by all of the terms and provisions of the Client Agreement, and by all decisions, rulings and interpretations of City or it's [sic] authorized representative.  A copy of the Client Agreement is attached hereto."  See Supplemental Affidavit of George Kougentakis dated April 4, 2008 ("Supp. Kougentakis Aff."), Exhibit A.

Finally, the contract between Beys and IWC is 33 pages long and says nothing about ADR.  Instead, Article 1, entitled Contract Documents, states that the Contract Documents shall consist of, inter alia, the Prime Contract between DDC and Hill.  Article 2.5, entitled Subcontractor's Obligations, states "Subcontractor shall follow and perform the Work in accordance with the Contract Documents as interpreted by Contractor or .[sic]"  Article 6.2 states that "Subcontractor represents and warrants that: . . . (e) Subcontractor has carefully examined the Contract Documents . . ."  Article 8.1 discusses Change Orders and how they should be handled.  Article 21, entitled Additional Provisions, contains the following: "21.2 Choice of Law and Forum: This Agreement shall be governed by and interpreted under the laws of the State of New York.  To the extent that any dispute arises hereunder and a suit is instituted thereby, it shall be brought in accordance with the terms and provisions contained in the Contract Documents . . . 21.3 Limitations on Actions: No action or proceeding shall lie or shall be maintained by Subcontractor

5

against the Contractor and [sic] unless such action shall be commenced within one (1) year after the date payment is mailed or otherwise made in respect of the Final Application for Payment or, if this Contract is Terminated, unless such action or proceeding is commenced within six (6) months after the date of such Termination." In addition, Article 21.7, entitled Entire Agreement, provides: "This Agreement specifically incorporates by reference herein all of the Contract Documents, including, but not limited to, the Plans and Specifications issued by , [sic] and the provisions and terms of all existing, or issued during the course of this Agreement, standard details, standard documents, standard drawings, and all applicable provisions which govern the installation and operation of all work." Kougentakis Aff., Exhibit C.

As was previously explained, Federal argues that IWC cannot maintain this action because it is bound by the ADR provisions contained in Article 29 of the contract between DDC and Hill. The Court disagrees, for two main reasons:

First, although New York courts have universally upheld the validity and enforceability of contractual provisions setting forth alternative dispute resolution procedures, see Westinghouse Electric Corp. v. New York City Transit Authority, 82 N.Y.2d 47, 53 (1993), "[a]n alternate dispute resolution agreement, like an arbitration agreement, must be clear, explicit and unequivocal and must not depend upon implication or subtlety." Thomas Crimmins Contracting Co. v. City of New York, 74 N.Y.2d 166, 171 (1989)(internal quotations marks and alterations omitted). While Article 29 of the

6

DDC/Hill contract contains a clear, explicit and unequivocal agreement to resolve disputes between the City and Hill according to the procedures set forth therein, the contract between Beys and IWC, and the surety bond between Beys and Federal, contain no direct reference to alternative dispute resolution at all.  Instead, they incorporate by reference the contracts between DDC and Hill, and Hill and Beys, respectively.

Under New York law (here applicable), "while an agreement to arbitrate can be incorporated by reference, any such reference must clearly show such an intent to arbitrate."  In the Matter of Aerotech World Trade. Ltd. v. Excalibur Systems, Inc., 236 A.D.2d 609, 611 (2nd Dep't 1997).  Especially on point is General Railway Signal Corp. v. L.K. Comstock & Co., 254 A.D.2d 759 (4th Dep't 1998), where defendant Comstock had contracted with the MTA to renovate subway signals in New York City.  The Prime Contract between Comstock and the MTA provided that all disputes arising under it would be submitted to the MTA's Contractual Disputes Review Board for resolution.  Comstock, however, then signed a subcontract with plaintiff to complete a portion of the work, and the subcontract contained no language regarding the procedure for resolving disputes between plaintiff and Comstock.  The Court held that, because "[n]owhere in the subcontract is there a 'clear, explicit and unequivocal' agreement to arbitrate . . . the terms of the subcontract do not meet the rigid standards necessary to establish an explicit commitment by plaintiff to submit its claims against

7

Comstock to alternative dispute resolution, as provided in the prime contract . . ." Id. at 760.

In the present case, the Beys/IWC subcontract does not on its face contain any "clear and express intent" to submit any disputes to ADR, or even mention the ADR provisions contained in the DDC/Hill contract at all. Accordingly, under the rulings in Aerotech and Comstock, IWC is not required to present its disputes to ADR.[1]

Second, even if one assumes that the entirety of the DDC/Hill contract, including its ADR provisions, were incorporated by reference into the Beys/IWC contract in a way that New York law would find adequate, the latter contract is still ambiguous as to what disputes, if any, IWC is required to submit to ADR. As previously noted, Article 29 of the contract between DDC and Hill, entitled Resolution of Disputes, applies on its face only to "All disputes between the City and the Contractor." Kougentakis Aff., Exhibit A, Article 29.1 (emphasis added). The term "Contractor" is elsewhere defined in the Prime Contract as "the party of the second part hereto [Hill] . . . and its, their, his or her successors, personal

---

[1] For an example of a subcontract that would contain such a clear intent, while incorporating an ADR provision from a separate contract by reference, see BAE Automated Systems, Inc. v. Morse Diesel International, Inc., 2001 WL 547133 (S.D.N.Y. May 22, 2001). In that case Section 7 of the Prime Contract established a procedure for the resolution of project-related disputes, and Section 21.1 of the subcontract at issue provided: "The disputes procedure set forth in Section 7 'Disputes' of the Primate Contract and set forth below is specifically incorporated herein and made a part of this Subcontract Agreement. Subcontractor [BAE] agrees to pursue and exhaust first said procedure before commencing any other actions for claims it may have." Id. at *1-2.

8

representatives, executors, administrators and assigns, and any person, firm or corporation who or which shall at any time be substituted in the place of the party of the second part [Hill] under this contract." Id., Article 1.14. This definition does not include subcontractors, who are defined in Article 1.34 as "any person, firm, or corporation, other than employees of the Contractor, who or which contracts with the Contractor or his subcontractors to furnish, or actually furnishes consulting services, labor, or labor and materials . . . All subcontractors are subject to the prior written approval of the Commissioner."

Because any ambiguity must be interpreted against the drafter, Beys, see Bazin v. Walsam 240 Owner, LLC, 18 Misc.3d 290, 294 (Sup. Ct. N.Y. Co. 2007), therefore, whether IWC should be bound by any provision that, on its face, applies only to the City and Hill, is questionable at best. See Progressive Casualty Insurance Co. v. C.A. Reaseguradora Nacional De Venezuela, 991 F.2d 42, 47-48 (2d Cir. 1993).

Furthermore, Article 10.2.2(g) of the DDC/Hill contract, entitled "Subcontract Requirements," explicitly provides that subcontracts between the Contractor and subcontractors for construction services

> shall contain a provision regarding the resolution of disputes between the subcontractor and the Contractor. Such provision shall conform to the requirements set forth below:
> (1) Such provision shall provide that all disputes the subcontractor may have of the kind delineated in Article 29 of this Agreement shall be resolved by the City in accordance with Article 29 and the PPB Rules. As set forth in Article 11, disputes submitted by a subcontractor to the Contractor must be submitted by

9

>   the Contractor to the City for resolution in
>   accordance with Article 29.
>   (2) Such provision shall provide that all terms,
>   conditions, requirements and limitations set forth in
>   Article 29, including the limitation on judicial
>   review, shall apply to disputes submitted by the
>   subcontractor, except as otherwise provided in
>   paragraph (3) bellow.
>   (3) Such provision shall provide that subcontractor
>   disputes and related material shall be submitted to
>   the Contractor, not to the City.  Such provision shall
>   contain time frames specified by the Contractor for
>   the submission of disputes and related material by the
>   subcontractor to the Contractor.  Such time frames
>   shall be reasonable and substantially similar to the
>   time frames set forth in Article 29.
>   (4) Such provision shall provide that the
>   subcontractor agrees that is has no right to submit a
>   dispute to the City.

Kougentakis Aff., Exhibit A, Article 10.2.2(g).[2]

Yet the contract between Beys and IWC contains none of these required provisions.  The Court finds that this is sufficient to raise an inference that the Article 29 dispute resolution procedures do not apply to IWC merely because its subcontract incorporates the entire DDC/Hill contract by reference, because the DDC/Hill contract sets forth specific requirements that subcontracts must contain in order to effectuate the provisions of Article 29, and the subcontract at issue here contains none of them.[3]

---

[2] Article 11.6.15 provides that the contractor shall "[u]ndertake the responsibilities set forth below with respect to disputes submitted by its subcontractors . . . (b) The Contractor shall submit the dispute filed by its subcontractor to the City for resolution in accordance with Article 29 of this Agreement." Id.

[3] Contrast this with other provisions of the Prime Contract between DDC and Hill that apply to subcontractors directly.  For example, Article 38.1.8 states "The Contractor and his Subcontractors shall keep such employment records as are required by Section 6-109 of the Administrative Code and the Rules of the

Further still, while Article 29 of the DDC/Hill contract provides for an elaborate ADR procedure for resolution of disputes between the City and the Contractor, with judicial review under Article 78 limited only to "the question of whether or not the Contract Dispute Resolution Board's decision was made in violation of lawful procedure, was affected by an error of Law, or was arbitrary and capricious or an abuse of discretion," id., Article 29.7.6, the subcontract between Beys and IWC provides that "No action or proceeding shall lie or shall be maintained by Subcontractor against the Contractor and [sic] unless such action shall be commenced within one (1) year after the date payment is mailed or otherwise made in respect of the Final Application for Payment, or, if this Contract is Terminated, unless such action or proceeding is commenced within six (6) months after the date of such Termination." Id., Exhibit C, Article 21.3. These two facially contradictory provisions are at least ambiguous as to which applies in any particular case, and that ambiguity, as noted, must be construed against the drafter, Beys. See Bazin, 18 Misc.3d at 294.

For all of these reasons, Federal's motion for summary judgment holding that this action is barred by the ADR provisions contained in the DDC/Hill contract was denied.

---

Procurement Policy Board." Id.

_____
JED S. RAKOFF, U.S.D.J.

Dated: New York, New York
       July 16, 2008